DECISION AND JOURNAL ENTRY
{¶ 1} Appellant/Cross-Appellee, Sandra K. Wenger, appeals from the judgment of the Wayne County Court of Common Pleas that entered a judgment of divorce. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.
 I. {¶ 2} On May 29, 2001, Appellant filed a complaint for divorce against Appellee/Cross-Appellant, Clair R. Wenger. Appellee answered and filed a counterclaim for divorce; however, Appellee later dismissed his counterclaim for divorce. The final divorce hearing was held before a magistrate. Following the hearing, the magistrate journalized his report and proposed decision. Both parties objected to the magistrate's report and proposed decision. The trial court overruled both parties' objections and adopted the magistrate's decision, thereby entering a decree of divorce in favor of Appellant. This appeal followed.
 II. {¶ 3} Appellant timely appeals and raises five assignments of error for review. Appellee cross appeals and raises four assignments of error for review. To facilitate review, we have rearranged the assignments of error and have jointly addressed Appellant's first and third assignments of error and Appellee's first and second cross-assignments of error.
 A. Fifth Assignment of Error
"THE TRIAL COURT'S DECISION, ALLOWING APPELLEE TO UTILIZE THE MARITAL RESIDENCE FOR A MINIMUM OF THREE YEARS, EVEN THOUGH THAT RESIDENCE WAS AWARDED AS THE MARITAL PROPERTY OF APPELLANT, WITHOUT RENT OR COMPENSATION OF ANY KIND, IS CONTRARY TO LAW, AND AN ABUSE OF DISCRETION."
 {¶ 4} In her fifth assignment of error, Appellant maintains the trial court's decision, which permitted Appellee to use the marital residence for a minimum of three years despite its decision to award Appellant the marital residence upon dissolution, was contrary to law and constituted an abuse of discretion. Appellant further maintains that the trial court erred when it valued the marital residence because it failed to account for the three years she would not have possession of the residence. We agree.
 {¶ 5} "A trial court is vested with broad discretion when fashioning [the] division of marital property." Bisker v. Bisker (1994),69 Ohio St.3d 608, 609, citing Berish v. Berish (1982), 69 Ohio St.2d 318. Accordingly, an appellate court will uphold a division of marital property unless the trial court abused its discretion when fashioning the division. West v. West, 9th Dist. No. 01CA0045, 2002-Ohio-1118, at ¶ 37. An abuse of discretion suggests more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. It implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Id.
 {¶ 6} Despite this broad discretion, the trial court should strive to disentangle the relationship between the parties, as the legal effect of a divorce is to extinguish the rights and obligations of the parties to each other. DiLacqua v. DiLacqua (May 26, 1993), 9th Dist. No. 15709;Walker v. Walker (July 27, 1994), 9th Dist. No. 16480; Hoyt v. Hoyt
(1990), 53 Ohio St.3d 177, 185. Additionally, the trial court should make "finality and conclusion" a priority. Hoyt, 53 Ohio St.3d at 185.
 {¶ 7} In this case, the record reveals that the trial court permitted Appellee to remain in the marital residence for a minimum of three years to allow the parties' son to complete high school. The trial court based its decision on the wishes of the parties' son to live in the same school district. While we understand the trial court's desire not to disrupt the child's schooling, we find that the trial court awarded Appellee the parties' second house, which was also located within the same school district. There is nothing in the record as to why Appellee could not live in that house other than his statement that he "would [not] choose to live there." Accordingly, we conclude that the trial court has abused its discretion by entangling Appellant and Appellee for an additional three years following the entry of divorce when it appears this need not be the result, as evidenced by the second house.
 {¶ 8} Notwithstanding our determination that the trial court has abused its discretion in that regard, we now turn to Appellant's argument concerning the trial court's valuation of the marital residence. The trial court has discretion to determine the value of marital property, and this court will not disturb such a determination absent an abuse of discretion. Cross v. Cross (June 20, 2001), 9th Dist. No. 00CA0074, citing Berish, 69 Ohio St.2d at 319. Despite this discretion, the trial court "`must have before it sufficient evidence to justify or support the [value] it obtains.'" Gregory v. Gregory (July 5, 2000), 9th Dist. No. 98CA0046, quoting Rodriguez v. Rodriguez (Apr. 13, 1990), 11th Dist. No. 89-G-1498.
 {¶ 9} The trial court awarded Appellant the marital residence and used the present fair market value when computing the division of the marital property. However, the trial court failed to consider in its computation the fact that Appellant would not have possession of the marital residence for at least three years. This factor should have entered the equation. For example, the trial court could have discounted the value assigned to the marital residence, determined the present value of the marital residence when Appellant would take possession, or ordered Appellee to pay Appellant rent for the duration of his use of the marital residence. Consequently, we conclude that the trial court abused its discretion in valuing the marital residence. Accordingly, Appellant's fifth assignment of error is sustained.
 B. First Cross-Assignment of Error
"THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY MAKING THE FINDING THAT THE HEALTH CARE BENEFITS OF APPELLANT[/CROSS-APPELLEE] SHOULD NOT BE CONSIDERED A MARITAL ASSET SUBJECT TO EVALUATION AND DIVISION."
 Second Cross-Assignment of Error
"THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN FAILING TO RECOGNIZE THE VALUE OF APPELLANT'S ACCUMULATED SICK LEAVE BENEFITS AND DIVIDE THE SAME AS A MARITAL ASSET; THAT THE TRIAL COURT'S DECISION ON THIS ISSUE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONSTITUTES AN ABUSE OF DISCRETION[.]"
 {¶ 10} These two cross-assignments of error relate to the trial court's categorization of the parties' property as either marital or separate property, and its subsequent exclusion of the property in the division. Specifically, in his first cross-assignment of error, Appellee contends that the trial court erred when it determined that Appellant's health insurance benefits should not be considered a marital asset subject to evaluation or division. Next, in his second cross-assignment of error, Appellee contends that the trial court failed to recognize Appellant's accumulated sick leave benefits as marital property subject to division. We find that Appellee's first cross-assignment of error does not have merit and that his second cross-assignment of error does have merit.
 {¶ 11} In a divorce action, marital property and separate property are mutually exclusive. R.C. 3105.171(A)(3)(b). The trial court divides marital property between the spouses, whereas it distributes separate property solely to the spouse to whom the separate property belongs. R.C.3105.171(C)(1) and (D).
 {¶ 12} Marital property is defined to include:
"(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
"(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
"(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
"(iv) A participant account, as defined in [R.C. 148.01], of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in [R.C. 148.06], and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage." R.C. 3105.171(A)(3)(a).
 {¶ 13} Conversely, separate property consists of:
"(6)(a) * * * all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
"(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
"(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
"(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
"(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under [R.C. 3105.17];
"(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;
"(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
"(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6).
 {¶ 14} As a trial court's classification of property as either marital or separate is a factual finding, an appellate court reviews the finding to determine whether it is supported by some competent, credible evidence. Spinetti v. Spinetti (Mar. 14, 2001), 9th Dist. No. 20113, citing Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159. See, also,Keyser v. Keyser (Apr. 9, 2001), 12th Dist. No. CA2000-06-127. "This standard of review is highly deferential[,] and even `some' evidence is sufficient to sustain the judgment and prevent a reversal." Barkley,119 Ohio App.3d at 159. Accordingly, an appellate court is guided by a presumption that the findings of the trial court are correct, as the trial court is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony. Id., citing In reJane Doe I (1991), 57 Ohio St.3d 135, 138.
 {¶ 15} We will now address each of Appellee's contentions in turn.
 1. Categorization of health insurance benefits {¶ 16} The funds available in pension plans vary considerably, andthese pension plans produce the health insurance benefits. As a result ofthe variance in available funds in these plans, the health insurancebenefits are produced in a discretionary manner. Specifically, thebenefits generated from these pension plans have decreased while theemployee's involvement has increased, namely, through higherdeductibles. This trend may persist and, eventually, lead to thenonexistence of benefits. Therefore, as the health insurance benefits area mere contingency, we cannot categorize them as marital property.Consequently, we conclude that the trial court did not err when itdetermined that Appellant's health insurance benefits were not maritalproperty and, therefore, not subject to division and distribution.
Appellee's first cross-assignment of error is overruled.
 2. Categorization of sick leave benefits {¶ 17} Sick leave benefits are marital assets subject to division and distribution. Weller v. Weller, 11th Dist. No. 2001-G-2370,2002-Ohio-7125, at ¶ 24; R.C. 3105.171(A)(3)(a)(ii). Many appellate courts have likened sick leave benefits to deferred bonus payments or pension plan accumulations and, thus, categorized these benefits as marital property. Hartley v. Hartley (Apr. 24, 1998), 2nd Dist. No. 16668; Pearson v. Pearson (May 20, 1997), 10th Dist. No. 96APF08-1100. See, also, Herrmann v. Herrmann (Nov. 6, 2000), 12th Dist. Nos. CA99-01-006 and CA99-01-011. The rationale underlying this principle is "[s]ince sick leave benefits, like deferred bonus payments or pension plan accumulations, are accumulated by the employee during employment in exchange for past services rendered, they are essentially deferred compensation earned during working years." Herrmann, supra.
 {¶ 18} In the present case, the record reveals that the only evidence regarding the value of Appellant's sick leave benefits was the testimony of David Kelley. Specifically, he testified that Appellant had accrued 150 days of sick leave, and that the value equated to "essentially one years pay[.]" The trial court concluded that "there was no testimony as to the value of this sick pay, * * * [and] [t]herefore [the] court [could not] assume a value." Assuming, without deciding, that the testimony of David Kelley does not establish a value of Appellant's sick leave benefits, we find that the trial court nonetheless committed reversible error. See Rupp v. Rupp (Nov. 27, 1987), 6th Dist. No. OT-86-71 (finding that the trial court committed reversible error when it failed to determine the value of a party's unused sick leave benefits despite the absence of evidence regarding its value). The trial court has the duty to determine the value of all assets upon the dissolution of a marriage. Id.; Willis v. Willis (1984), 19 Ohio App.3d 45, 48. Absent such a determination, an appellate court is unable to review the propriety of the overall division of assets. Willis,19 Ohio App.3d at 48. "The trial court is not privileged to omit valuation altogether." Id. If the parties fail to present evidence regarding an asset's value, the trial court should instruct the parties to submit such evidence. Id.
 {¶ 19} As the trial court determined that no evidence existed as to the value of the sick leave benefits, it should have instructed the parties to submit evidence regarding such value rather than simply disregarding its value and excluding the value of this benefit from the marital property division. See id. Hence, we conclude that the trial court erred by failing to ascertain the value of the sick leave benefits, and by failing to include such value in its division of marital property. Accordingly, Appellee's second cross-assignment of error is sustained.
 C. Second Assignment of Error
"THE AWARD OF 61% OF THE MARITAL ESTATE TO APPELLEE HUSBAND AND 39% TO APPELLANT WIFE IS AN ABUSE OF DISCRETION."
 {¶ 20} In her second assignment of error, Appellant avers that the trial court's division of the parties' marital property was erroneous. Particularly, she avers that the decision was an abuse of discretion. We agree.
 {¶ 21} The trial court maintains the discretion to equitably divide marital property as required by R.C. 3105.171. Berish,69 Ohio St.2d at 319; Ingle v. Ingle (Nov. 16, 1994), 2nd Dist. No. 3096. Although the trial court should strive to divide marital property equally between the parties, the division need not be equal if it would be inequitable to do so. R.C. 3105.171(C)(1). However, the trial court's absolute failure to divide marital property either equally or otherwise constitutes an abuse of discretion. Ingle, supra. Absent an abuse of discretion, an appellate court will not disturb a trial court's division of marital property pursuant to R.C. 3105.171. Booth v. Booth (1989),44 Ohio St.3d 142, 144.
 {¶ 22} In determining what is an equitable division of marital property, the trial court shall consider all relevant factors, including those in R.C. 3105.171(F). Those factors include:
"(1) The duration of the marriage;
"(2) The assets and liabilities of the spouses;
"(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
"(4) The liquidity of the property to be distributed;
"(5) The economic desirability of retaining intact an asset or an interest in an asset;
"(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
"(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
"(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
"(9) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.171(F).
 {¶ 23} Our review of the record indicates that the trial court recognized the property distribution was not equal, but deemed the distribution equitable. The record further indicates that the trial court considered the statutory factors to justify the disparity in distribution of marital property between Appellant and Appellee. Nevertheless, we find that the trial court acted unreasonably, arbitrarily, and unconscionably when it divided the parties' marital property because the division was not only unequal, but also inequitable. Despite this finding, we are not suggesting that an equitable division of marital property must result in a 50-50 split between the parties to validate the trial court's division. See Stovall v. Stovall (Sept. 23, 1992), 9th Dist. No. 15335;Maffey v. Maffey (Sept. 28, 1983), 12th Dist. No. 413; Richardson v.Richardson (May 14, 1981), 3rd Dist. No. 3-80-19.
 {¶ 24} This court finds that the trial court abused its discretion when it failed to adjust the value of the marital residence to reflect its value at the time Appellant will actually take possession, ownership, and control of the property. Further, the trial court failed to include Appellant's sick leave benefits in its distribution. Additionally, the trial court failed to adequately explain its decision not to require Appellee to borrow money to equalize the distribution. For example, had the trial court found that the banks lent Appellee money based upon the credit of Appellant, that would have adequately supported its decision not to require Appellee to borrow money, as he would most likely be unable to obtain such funds following the divorce. However, the trial court did not make such finding, nor does the record demonstrate that Appellee would be unable to secure the funds to pay Appellant on this basis. Finally, the trial court relied on the health insurance benefits to justify its "equitable" division; however, as the trial court properly determined that the health insurance benefits were not marital property subject to division, it should not have included this asset as a factor to substantiate its division. Accordingly, Appellant's second assignment of error is sustained.
 D. First Assignment of Error
"THE TRIAL COURT ERRED IN DIVIDING ASSETS BY GIVING APPELLEE HUSBAND NEARLY $400,000 MORE OF THE MARITAL ESTATE THAN WAS AWARDED TO APPELLANT WIFE."
 Third Assignment of Error
"THE COURT'S RATIONALE IN AWARDING HUSBAND 61% AND WIFE 31% IS CONTRARY TO LAW, IS NOT SUPPORTED BY THE EVIDENCE AND CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} In these assignments of error, Appellant also contends that the trial court's division of the parties' marital property was erroneous; however, she contends that this error was contrary to law and against the manifest weight of the evidence. In light of our disposition of the second assignment of error, we need not address the first and third assignments of error, as these assignments of error are now rendered moot. See App.R. 12(A)(1)(c).
 E. Fourth Assignment of Error
"THE TRIAL COURT'S AWARD OF PROPERTY IN THIS PARTICULAR CASE IS AN ABUSE OF DISCRETION BECAUSE THE APPELLANT IS LEFT WITH MORE THAN 96% OF THE ASSETS BEING AWARDED TO HER BEING NON-LIQUID ASSETS, WHICH ARE NOT REACHABLE BY HER, WHICH, IN CONJUNCTION WITH THE GROSS DISPARITY IN THE AWARD, CONSTITUTES AN ABUSE OF DISCRETION."
 {¶ 26} In her fourth assignment of error, Appellant alleges that the trial court abused its discretion when it divided the marital assets, as it awarded her primarily illiquid assets that are not readily useable. However, Appellant has failed to cite any legal authority that would support her assignment of error. Additionally, Appellant did not separately address this assignment of error in her brief despite separately stating it on the assignment of error page.
 {¶ 27} An appellant has the burden of affirmatively demonstrating error on appeal. Angle v. W. Res. Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M; Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086. As such, an appellant must provide citations to authorities supporting his or her brief as required by App.R. 16(A)(7) and Loc.R. 7(A)(6). Further, the party presenting an assignment of error must "identify in the record the error on which the assignment of error is based" and "argue the assignment separately in the brief[;]" otherwise, an appellate court may disregard the assignment of error. App.R. 12(A)(2) and App.R. 16(A)(2). See State v. Gomez, 9th Dist. No. 02CA008036,2002-Ohio-5255, at ¶ 16. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out."Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673. Accordingly, as Appellant has failed to separately address assignment of error four in her brief and has failed to identify any legal error by the trial court in her assignment of error, this court has no choice but to disregard this assignment of error. See App.R. 12(A)(2). Appellant's fourth assignment of error is overruled.
 F. Third Cross-Assignment of Error
"THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN CALCULATING CHILD SUPPORT BY INCLUDING THE FULL AMOUNT OF DEPRECIATION EXPENSE OF APPELLEE/CROSS-APPELLANT AS INCOME WHEN THE DEPRECIATION EXPENSE CONSISTED OF ACTUAL PAYMENTS FOR PURCHASES OF REPLACEMENT PROPERTY AND PAYMENT OF DEBT; THAT THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN DENYING APPELLEE/CROSS-APPELLANT'S SPOUSAL SUPPORT CLAIM."
 {¶ 28} In his third cross-assignment of error, Appellee avers that the trial court erred in computing the child support obligation of Appellant. In particular, this averment rests on Appellee's contention that the trial court overstated his depreciation expense, as it included the "actual payments for purchases of replacement property and payment of debt" in the figure. We disagree.
 {¶ 29} The trial court must deduct ordinary and necessary expenses from a parent's gross receipts when calculating the gross income of that self-employed parent. Foster v. Foster, 150 Ohio App.3d 298,2002-Ohio-6390, at ¶ 16. Ordinary and necessary expenses "[do] not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business," except as "specifically included in `ordinary and necessary expenses incurred in generating gross receipts' by division (C)(9)(a) of this section[.]" R.C. 3119.01(C)(9)(b). R.C. 3119.01(C)(9)(a) defines ordinary and necessary expenses as "actual cash items expended * * * and includes depreciation expenses of business equipment[.]" Other types of depreciation deductions "[are] designed to ensure that a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support." See Baus v. Baus (1991),72 Ohio App.3d 781, 784.
 {¶ 30} In order to exclude the depreciation deduction from the calculation of gross receipts under R.C. 3119.01(C)(9)(b), the actual cash expenditure must be incurred in the same tax year. Foster at ¶ 20. Without evidence illustrating that the depreciation deduction represents actual cash expenses in the year the deduction was taken, R.C. 3119.01(C)(9) requires the court to include the depreciation deduction when computing the parent's gross income for that year. Id. See, also, Baus, 72 Ohio App.3d at 784.
 {¶ 31} After a thorough review of the record, we conclude that the actual cash expenses for the items, which comprise the depreciation deduction, were not incurred in the same year that Appellee took the deduction and that the court computed Appellee's gross income with these deductions. As such, we find that the trial court did not err by including Appellee's depreciation deductions when computing his gross income. Appellee's third cross-assignment of error is overruled.
 G. Fourth Cross-Assignment of Error
"THE TRIAL COURT ERRED IN FINDING THAT APPELLEE/CROSS-APPELLANT FAILED TO MEET HIS BURDEN OF PROOF ON ESTABLISHING A SEPARATE PROPERTY CLAIM OF $120,000 REPRESENTING THE DISCOUNTED `BARGAIN SALE' PRICE OF $750 PER ACRE FOR THE 160-ACRE FARM."
 {¶ 32} In his fourth cross-assignment of error, Appellee contends that the trial court erroneously determined that he had failed to demonstrate that he had a separate property claim to $120,000, which allegedly represented the discounted "bargain sale" price of the 160-acre farm. To support this contention, Appellee asserts that he presented competent and credible evidence that the "bargain sale" price constituted a gift, thereby entitling him to the $120,000. We disagree with Appellee's contention.
 {¶ 33} In a divorce, marital property and separate property are mutually exclusive. R.C. 3105.171(A)(3)(b). The trial court divides marital property between the spouses, whereas it distributes separate property solely to the spouse to whom the separate property belongs. R.C.3105.171(C)(1) and (D). The trial court's characterization of property as either marital or separate property is a factual inquiry. Boreman v.Boreman, 9th Dist. No. 01CA0034, 2002-Ohio-2320, at ¶ 7. Accordingly, an appellate court will uphold a trial court's factual conclusions so long as they are supported by competent, credible evidence. Spinetti, supra.
 {¶ 34} In the present case, the record reveals that Appellee's father sold the 160-acre farm to Appellee and Appellant at an alleged discounted rate of $2,000.00 per acre. Specifically, Appellee testified that he "felt that [they] got a discounted rate * * * [a]nd [he] felt it was somewhere that amounted to 750 to a thousand dollars per acre." Even assuming the parties purchased the 160-acre farm at a discounted rate, we cannot find that this "good deal" constitutes separate property. SeeBoreman at ¶ 25 (concluding that where the parties received a discounted purchase price for a piece of property, which had been labeled a "good deal," this "good deal" did not constitute separate property because it did not fall within R.C. 3105.171(A)(6)(a)). See, also, R.C.3105.171(A)(6)(a).
 {¶ 35} Despite our finding that the discounted "bargain sale" price was not separate property, we must still determine whether it was a gift given solely to Appellee. When a gift is given during the marriage, to classify the gift as separate property it must be proven that the gift was only given to one spouse. R.C. 3105.171(A)(6)(a)(vii). This assertion must be proven by clear and convincing evidence. Spinetti, supra. See, also, West v. West, 9th Dist. No. 01CA0045, 2002-Ohio-1118, fn. 3. Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, 477; Barkley,119 Ohio St.3d at 168-169.
 {¶ 36} After a careful review of the record, we cannot say that Appellee's father intended the alleged discounted "bargain sale" price of the 160-acre property to constitute a gift to Appellee. Specifically, Appellee testified that his father sold the property to both him and Appellant, and both parties' names were included on the deed. Further, the record does not indicate, nor does Appellee point to any evidence, that the alleged discounted "bargain sale" price was for the benefit of Appellee. Accordingly, we conclude that clear and convincing evidence does not exist to demonstrate that the alleged discounted "bargain sale" price constituted a gift to Appellee. Therefore, the trial court properly determined that the discounted "bargain sale" price was not Appellee's separate property. Appellee's fourth cross-assignment of error is overruled.
 III. {¶ 37} Appellant's assignments of error two and five are sustained, assignment of error four is overruled, and assignments of error one and three are not addressed. Appellee's cross-assignment of error two is sustained, and cross-assignments of error one, three and four are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed in part, reversed in part, and cause remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
Baird, P.J. concurs in judgment only.