DECISION AND JOURNAL ENTRY
{¶ 1} Appellant/Cross-Appellee, Douglas M. Schiesswohl ("Douglas") appeals from a judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that granted him a divorce from the Appellee/Cross-Appellant, Jacquelyn J. Schiesswohl ("Jacquelyn"). Jacquelyn has filed a cross-appeal. We reverse in part, affirm in part, and remand.
 I. {¶ 2} On May 7, 2002, Douglas filed a complaint for divorce. Jacquelyn filed a counterclaim on September 23, 2002. Following a trial, the trial court granted the parties a divorce, divided their property, and ordered Jacquelyn to pay spousal support. Douglas appeals, raising seven assignments of error. Jacquelyn cross-appeals, raising one cross-assignment of error. For ease of review, we have rearranged and consolidated the assignments of error.
 II. Cross-Assignment of Error
"The trial court erred in ordering [Jacquelyn] to maintain life insurance on her life naming [Douglas] as irrevocable beneficiary in an amount sufficient to satisfy her obligation for spousal support."
 {¶ 3} In her sole cross-assignment of error, Jacquelyn argues that the trial court erred by ordering her to maintain insurance on her life as security for her spousal support obligation. We agree.
 {¶ 4} In its final order, the trial court ordered Jacquelyn to pay Douglas spousal support in the amount of $2,500 per month, and provided that this support "shall terminate upon Husband's/Wife's death, Husband's remarriage or twenty-five (25) months[,] whichever occurs first." The court then ordered Jacquelyn to "maintain life insurance on her life, naming [Douglas] as an irrevocable beneficiary in an amount sufficient to satisfy her obligation of spousal support[.]"
 {¶ 5} "[W]hen the award of spousal support is terminable upon the death of the obligor, * * * the trial court errs in ordering the obligor to secure the obligation with an insurance policy on his life." Moore v. Moore (1997), 120 Ohio App.3d 488, 492, citing Sergi v. Sergi (Jul. 31, 1996), 9th Dist. No. 17476, at 22. Because Jacquelyn's support obligation was terminable upon her death, the trial court erred by ordering her to secure her obligation with insurance on her life. Jacquelyn's cross-assignment of error is sustained.
 Assignment of Error No. 1
"The trial court erred in applying the wrong standard to the determination that [Jacquelyn] was not in contempt and abused its discretion in not making a finding of contempt."
 {¶ 6} In his first assignment of error, Douglas maintains that the trial court erred by failing to find Jacquelyn in contempt for her violation of certain court orders. We find that Douglas does not have a right to appeal the dismissal of his contempt motions.
 {¶ 7} On May 8, 2002, the trial court issued a temporary mutual restraining order, which, in relevant part, directed the parties not to "sell, dispose of or dissipate" any of their personal property. On September 23, 2002, following a hearing, a magistrate ordered Jacquelyn to pay temporary spousal support in the amount of $3,400 per month, effective May 7, 2002. The magistrate also ordered Jacquelyn to pay for her own expenses.
 {¶ 8} In the months leading up to the divorce trial, Douglas filed three motions seeking orders holding Jacquelyn in contempt of the temporary orders. In two of the motions, Douglas alleged that Jacquelyn had failed to comply with the court's temporary spousal support order; in the third, Douglas alleged that Jacquelyn had sold certain assets in violation of the temporary restraining order. These motions remained pending as of the date of the divorce trial.
 {¶ 9} At trial, Jacquelyn admitted that she had not paid the spousal support, and that she owed arrearages in the amount of $26,600. Jacquelyn also admitted that she had sold three horses without first obtaining a release of the court's restraining order. Notwithstanding these admissions, the trial court dismissed the three contempt motions in its final order.
 {¶ 10} The trial court excused Jacquelyn's violation of its temporary spousal support order on the ground that she had established her inability to comply with both that order and the order to provide for her own expenses. Applying similar reasoning, the trial court excused Jacquelyn's violation of its restraining order on the ground that she sold the three horses in an attempt to reduce her monthly expenses. The trial court did, however, account for the $26,600 support arrearage and the sale of the three horses in its final order, giving Douglas a credit of $26,600 against the amount he owed Jacquelyn as a result of the property division, and awarding Douglas two horses and a one-half interest in a third horse.
 {¶ 11} Douglas maintains that, by dismissing his motion for contempt, the trial court established dangerous precedent which threatens to undermine the authority of temporary support orders and restraining orders. The potential for injury to the trial court's future orders, however, is a matter of concern for the trial court, and does not entitle Douglas to seek review of the dismissal of his contempt motion.
 {¶ 12} The Ohio Supreme Court has held that "[t]here is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal."Denovchek v. Bd. of Trumbull Cty. Commrs. (1988),36 Ohio St.3d 14, syllabus. Underlying this holding is the Court's observation that "[a]bsent a showing of prejudice to the party making the contempt motion, contempt is essentially a matter between the court and the person who disobeys a court order[.]" Id. at 17.
 {¶ 13} Responding to Jacquelyn's arguments to the contrary, Douglas maintains that he was indeed prejudiced by the dismissal of the contempt motions. First, Douglas contends that because he did not receive the ordered temporary spousal support, he was forced to take cash advances on credit cards in order to meet his monthly expenses. Douglas asserts that, because the trial court accounted for the arrearages by awarding him an offset against the amounts he owed to Jacquelyn, rather than cash, he was unable to repay those advances. Next, Douglas maintains that Jacquelyn's unauthorized sale of the three horses left him with no means with which to determine whether or not the sales were reasonable. In fact, according to Douglas, he has not even been able to verify whether or not the transactions actually took place. Further, Douglas maintains that he was not made whole by the trial court's final order, which awarded him not three horses, but two horses and a one-half interest in a third horse. Finally, Douglas asserts that he was injured by incurring the attorneys fees associated with each of the three contempt motions.
 {¶ 14} Douglas has not established that he was prejudiced by the dismissal of his contempt motions in the trial court's final order. Specifically, he has not explained what he might have gained from a finding of contempt at the time the final order was journalized. While Douglas might not be completely satisfied with the ways in which he was compensated, the trial court did account for Jacquelyn's violations in its final order. Lastly, it is true that, had the trial court found Jacquelyn in contempt, it would have had the discretion to tax her with the attorneys fees Douglas incurred in connection with the contempt proceeding.Planned Parenthood Ass'n v. Project Jericho (1990),52 Ohio St.3d 56, 67. However, a finding of contempt would not have required the trial court to exercise its discretion in Douglas's favor; in other words, a finding of contempt would not have guaranteed Douglas's recoupment of his attorneys fees.
 {¶ 15} While it is true that the trial court might have used its contempt powers in order to vindicate its own authority, by punishing Jacquelyn for her past violations of its orders, Douglas has no standing to seek such punishment. See State exrel Corn v. Russo (2001), 90 Ohio St.3d 551, 555, citingDenovchek, 36 Ohio St.3d 14. Because he is not entitled to appeal the trial court's dismissal of his contempt motions, Douglas's first assignment of error is overruled.
 Assignment of Error No. 7
"The trial court abused its discretion in failing to grant a continuance where [Jacquelyn] had failed to produce information critical to valuation of the horses in defiance of an order compelling such production."
 {¶ 16} In his seventh assignment of error, Douglas maintains that the trial court erred by refusing to grant his request for a continuance. We agree.
 {¶ 17} The decision whether to grant or deny a continuance is within the sound discretion of the trial court and should not be reversed on appeal absent an abuse of discretion. State v.Unger (1981), 67 Ohio St.2d 65, 67. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.
 {¶ 18} On April 1, 2003, the trial court set the date for the parties' divorce trial, scheduling the proceeding for May 27, 2003. On May 21, 2003, Douglas filed a motion to continue the trial. In that motion, Douglas asserted that Jacquelyn had failed to "completely respond" to his "numerous requests for documentation and discovery materials regarding the horses that were purchased during the marriage." Additionally, Douglas maintained, he had just learned, at Jacquelyn's May 14, 2003 deposition, that Jacquelyn had transferred several horses to out-of-state third parties, in violation of the temporary restraining order. Douglas contended that due to Jacquelyn's actions, he was prevented from obtaining fair market values for the horses, and requested a continuance of the trial so that such values might be obtained.
 {¶ 19} The motion remained pending as of the date of the trial. At the beginning of the trial, the court expressed its intention to conclude the proceeding in one day, noting that the matter was "close to the time limits set by the Supreme Court [within] which we have to finish cases." In his opening statement, Douglas's counsel reminded the court of the pending motion to continue and asserted that Jacquelyn had still failed to respond to discovery requests regarding the horses. Without addressing the motion to continue or commenting upon any of the factors relevant to an evaluation of such a motion, the court proceeded with the trial.
 {¶ 20} In reviewing whether the trial court abused its discretion by denying a motion for a continuance, this court must "apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party." Burton v. Burton (1999), 132 Ohio App.3d 473,476, citing State v. Unger (1981), 67 Ohio St.2d 65, 67-68. When determining whether or not to grant a continuance, the trial court should note: "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to the litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [moving party] contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors[.]"State v. Unger (1981), 67 Ohio St.2d 65, 67. In order to review the trial court's decision to deny Douglas's motion for a continuance, we will examine the above-listed factors. SeeBurton, 132 Ohio App.3d at 476.
 {¶ 21} Douglas did not define the requested delay by a specific time, but by the objective being pursued, asking for a continuance long enough to permit him to obtain the fair market values of the horses. Jacquelyn has not denied that she is capable of producing the requested discovery materials. Nor has Jacquelyn denied Douglas's assertion that such materials are required in order to have the horses appraised. Therefore, while the length of the delay may be uncertain, its duration is, to a large extent, beyond Douglas's control and within Jacquelyn's.
 {¶ 22} While three prior continuances had been granted in connection with various pre-trial proceedings, no prior continuances had been granted in connection with the trial itself. Of those three prior continuances, two were granted upon Jacquelyn's request, and the other was granted upon Douglas's request.
 {¶ 23} The record contains no evidence that a continuance would have inconvenienced the parties, their witnesses, or their attorneys. The only evidence of inconvenience to the court was the trial court's observation of the pressure imposed by a looming deadline.
 {¶ 24} The record contains no evidence that Douglas filed the motion with any contrived or illegitimate purpose. Rather, it indicates that Douglas's stated purpose, to obtain the appraisals and fair market values of the horses, was both valid and in earnest. Douglas maintains that he has made several unfruitful attempts to obtain certain discovery materials from Jacquelyn; Jacquelyn has not denied her failure to produce those documents. Douglas has repeatedly maintained that he needs the unproduced materials in order to obtain an appraisal of the horses; Jacquelyn does not dispute this necessity.
 {¶ 25} The trial court did have before it evidence relevant to the values of the horses, including Jacquelyn's and Douglas's opinions; tax documents; and insurance documents. These sources offer broadly contradictory accounts of the values of the animals. Douglas maintains that appraisals are required in order to establish the fair market values of the horses. Jacquelyn does not dispute this point, instead simply arguing that the division of the horses was fair. In short, neither party has suggested that the court might have established the fair market values of the horses based upon the conflicting evidence before it. In fact, the trial court did not assign values to any of the horses, leaving this court unable to review the propriety of its division of the animals. See Wenger v. Wenger, 9th Dist. No. 02CA0065, 2003-Ohio-5790, at ¶ 18.
 {¶ 26} Jacquelyn has suggested that Douglas contributed to the circumstances prompting his motion to continue, by failing to accept two horse appraisers she recommended to him through counsel. While it may be true that Douglas chose not to approve of two appraisers suggested by Jacquelyn, it is also true that Jacquelyn has not denied her own failure to provide Douglas with certain documents essential to an appraisal.
 {¶ 27} In light of our examination of the above factors, we find that the potential prejudice to Douglas outweighed the interest in efficiency, and that the trial court abused its discretion by failing to grant Douglas's motion for a continuance. Douglas's seventh assignment of error is sustained.
 {¶ 28} In his remaining assignments of error, Douglas challenges the trial court's division of property.
 Assignment of Error No. 5
"The valuation of the 1999 porsche was against the manifest weight of the evidence."
 {¶ 29} In order to formulate an equitable division of property in divorce proceedings, the trial court should first determine the value of the property. Eisler v. Eisler (1985),24 Ohio App.3d 151, 152. In his fifth assignment of error, Douglas maintains that the trial court erred in its valuation of a 1999 Porsche Carrera, an item of marital property. We agree.
 {¶ 30} Douglas entered into a lease of the 1999 Porsche Carrera in March, 2000. The lease expired in March, 2003, and Douglas purchased the vehicle for $42,947.53. At trial, Douglas testified that, based upon Kelley Blue Book values, he believed that the fair market value of the Porsche was $40,000. Douglas also testified that he had financed the purchase, and owed more than $40,000 on the loan. Therefore, according to Douglas, there was no equity in the vehicle at the time of the trial.
 {¶ 31} Jacquelyn contended that the Porsche actually had a higher fair market value, of $52,191. As evidence of this estimate, Jacquelyn submitted a photocopy of a published list of car values, with the values for the 1999 Porsche Carrera Cabriolet and various pieces of optional equipment highlighted. Based upon these values and the loan against the vehicle, Jacquelyn calculated that the Porsche purchased by Douglas had an equity value of $9,244. Agreeing with Jacquelyn's calculations, the trial court found that the vehicle had an equity value of $9,244.
 {¶ 32} Douglas argues that the court's valuation of the vehicle is against the manifest weight of the evidence. When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence, the reviewing court:
"[reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way[.]" State v. Thompkins
(1997), 78 Ohio St.3d 380, 387.
 {¶ 33} The trial court had before it conflicting evidence regarding the value of the vehicle, and resolved that conflict by adopting Jacquelyn's propounded equity value of $9,244. However, as Douglas points out, the $9,244 equity value is based upon an inapplicable fair market value. According to a purchase agreement and loan disclosure statement submitted by Douglas, the vehicle owned by the parties is a 1999 Porsche Carrera, not a 1999 Porsche Carrera Cabriolet. Jacquelyn has not disputed this description. The very list submitted by Jacquelyn as evidence of the vehicle's value reveals that the two names describe different models. Moreover, that list assigns a value to the Porsche Carrera which is significantly lower than the value assigned to the Porsche Carrera Cabriolet.
 {¶ 34} The equity value assigned to the vehicle is grounded upon an apparent factual mistake and is against the manifest weight of the evidence. Therefore, Douglas's fifth assignment of error is sustained.
 Assignment of Error No. 3
"The trial court erred in holding that tax refunds were separate property simply because the parties filed separate return[s] even though the income and losses had been generated from marital income and investment losses."
 Assignment of Error No. 4
"The trial court erred in holding that furniture and other personal property purchased by [Jacquelyn] with marital funds after the complaint was filed was [Jacquelyn's] separate property when the duration of the marriage was found to be the date of the marriage through the date of the trial."
 {¶ 35} Before it begins to divide the property in divorce proceedings, the trial court must classify the various items of property as either marital or separate. R.C. 3105.171(B). In his third and fourth assignments of error, Douglas argues that the trial court erred by classifying certain assets as Jacquelyn's separate property. We agree.
 {¶ 36} A trial court's factual determinations underlying its classification of property as marital or separate will be upheld if they are supported by competent, credible evidence. Spinettiv. Spinetti (2001), 9th Dist. No. 20113, at 7. However, Douglas does not dispute the trial court's factual determinations regarding the property classifications, but challenges the trial court's legal conclusions only. Therefore, our review is de novo. See Wayne Mut. Ins. Co. v. Parks, 9th Dist. No. 20945, 2002-Ohio-3990, at ¶ 13.
 Tax Refund {¶ 37} In its final order, the trial court found that Jacquelyn and Douglas "filed separate tax returns throughout the marriage." Based upon this factual finding, the court classified 2002 federal and state tax refunds in the amount of $21,355 as Jacquelyn's separate property.
 {¶ 38} In pertinent part, R.C. 3105.171 defines as marital property "[a]ll * * * personal property that is currently owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage." R.C.3105.171(A)(3)(a)(i). It is undisputed that the tax refunds reflected income earned by Jacquelyn during the marriage. Therefore, the refunds fall squarely within the statutory definition of marital property. The mere fact that Jacquelyn filed a separate return does not transform the tax refunds into her separate property. See Norris v. Norris, 7th Dist. No. 01CA173, 2002-Ohio-5211, at ¶ 16. The trial court erred as a matter of law by classifying the tax refunds as Jacquelyn's separate property. Douglas's third assignment of error is sustained.
 Furniture {¶ 39} The trial court determined that the marriage terminated on the date of the divorce trial. Notwithstanding this determination, the court classified as Jacquelyn's separate property certain pieces of furniture acquired before this date, but after the complaint was filed. Because this property was acquired during the marriage, it, like the tax refunds, falls squarely within the definition of marital property provided by R.C. 3107.171(A)(3)(a)(i). Because it lacked a basis upon which to classify these items as Jacquelyn's separate property, the trial court erred as a matter of law by doing so. Douglas's fourth assignment of error is sustained.
 Assignment of Error No. 6
"The trial court erred in failing to divide [Jacquelyn's] one-half ownership interest in sarah (a horse), $4,200 in horse equipment, and a $5,000 account receivable or credit generated from the sale of beanie (another horse)."
 {¶ 40} In his sixth assignment of error, Douglas maintains that the trial court erred by failing to dispose of certain items of property. We agree.
 {¶ 41} "`A divorce decree that does not dispose of all the property * * * is insufficient and incomplete.'" Noll v. Noll
(June 7, 2000), 9th Dist. No. 98CA007042, at 11, quoting Kettev. Kette (Nov. 12, 1997), 9th Dist. No. 18288.
 {¶ 42} At trial, the parties submitted evidence regarding horse equipment and two horses, Sarah and Beanie. Douglas submitted, as part of Exhibit 14F, a document labeled "Jackie Schiesswohl Balance Sheet as of December 31, 2001." Included among the assets listed on the balance sheet are "Equipment-Other," "Sarah," and "Beanie." The sheet assigns the following values to those three assets: $4,218.99 for the equipment; $3,750 for Sarah; and $7,975 for Beanie.
 {¶ 43} Jacquelyn's testimony at trial discloses the following details regarding the three assets. The equipment referred to on the balance sheet included boots, saddles, pads, bridles, riding clothes, show outfits, and horse blankets. Sarah, a horse, is titled in both Jacquelyn's name and her mother's name. Sarah was purchased in January, 2000 for $6,500, and, according to Jacquelyn's opinion, had a value between $2,500 and $5,000 at the time of the trial. Beanie, also a horse, was purchased for $6,500, and was subsequently traded in exchange for a $5,000 credit toward horse training.
 {¶ 44} Despite the evidence regarding the existence of the horse equipment, Sarah, and the credit received in exchange for Beanie, the trial court made no findings regarding the present value, if any, of those assets, and made no disposition of those assets. Douglas's sixth assignment of error is sustained.
 Assignment of Error No. 2
"The trial court abused its discretion in determining that almost $100,000 in marital debt should be allocated to [douglas] without any offset in value."
 {¶ 45} In his second assignment of error, Douglas challenges the trial court's disposition of two debts: a debt to Robert C. Schiesswohl, in the amount of $32,350; and a debt to the Jeanne Schiesswohl Trust, in the amount of $55,000 plus interest at the rate of 6% per annum. Specifically, Douglas maintains that the trial court erred by classifying the $32,350 as his separate debt, and by allocating the $55,000 (plus interest) marital debt to him alone.[1]
We agree.
 {¶ 46} The property to be divided in a divorce proceeding includes not only the assets owned by the parties, but also any debts incurred by the parties. Marrero v. Marrero 9th Dist. No. 02CA008057, 2002-Ohio-4862, at ¶ 43. Therefore, the same principles that govern our analysis of the disposition of the parties' assets direct our analysis of the disposition of the parties' debts.
 Classification of the Debt to Robert C. Schiesswohl {¶ 47} At trial, Jacquelyn submitted, as Exhibit K, a photocopy of a promissory note signed by Douglas. The note reads, in part: "The following outlines monies loaned to Douglas M. and Jacqueline (sic) J. Schiesswohl from Robert C. Schiesswohl for the purpose of `Meeting' or satisfying margin calls requirements due on their equity accounts." The note reflects that the loan was distributed through several installments made during the course of the marriage — from August 15, 2000 through October 13, 2000. The note provides a tally of the installations, reporting a total loan amount of $32,350.
 {¶ 48} The trial court classified the $32,350 debt as Douglas's separate property. While the trial court did not explicitly identify the basis for this classification, the parties agree that the decision was informed by the trial court's determination that the loan was taken in order to cover the margin call debt on Douglas's investment account, and its observation that the parties kept separate finances and made investment decisions independent of one another.
 {¶ 49} Because the debt was acquired during the marriage, it, like the tax refund, falls within the definition of marital property provided by R.C. 3105.171(A)(3)(a)(i). While the debt may have been used to cover the margin call debt on Douglas's investment account, it is undisputed that this investment account was funded by marital assets. Just as the trial court's finding that the parties filed separate tax returns does not support its classification of the tax refund of marital income as Jacquelyn's separate property, its finding that the parties maintained separate investment accounts does not support its classification of a debt incurred in association with Douglas's account as Douglas's separate property. The trial court erred as a matter of law by classifying the debt to Robert C. Schiesswohl as Douglas's separate property.
 Division of the Debt to the Jeanne Schiesswohl Trust {¶ 50} At trial, Douglas submitted, as Exhibit 7C, a copy of a promissory note signed by himself and Jacquelyn, dated May 1, 2000. The note reads, in relevant part, "FOR VALUE RECEIVED, the undersigned, Douglas Schiesswohl and Jacqueline (sic) Schiesswohl, promise to pay to the order of David E. Griffiths, Trustee of the Jeanne Schiesswohl Trust, the sum of Fifty-five Thousand Dollars ($55,000.00). The note shall be payable with interest at the rate of six percent (6%) per annum[.]"
 {¶ 51} The court found that the parties used the loan to purchase a Freightliner tractor/trailer, and then leased the vehicle in exchange for $1.00 and the option to purchase a two percent interest in GSYS, LLC. After classifying the debt as marital property, the court allocated the entire balance, along with the Freightliner tractor/trailer and the GSYS option, to Douglas. This allocation was based upon the court's finding that "the Freightliner tractor/trailer and the GSYS stock option are assets which are offset by the liability to the Jeanne Schiesswohl Trust."
 {¶ 52} We are unable to review the fairness of the trial court's decision to allocate to Douglas the entire balance of the debt to the Jeanne Schiesswohl trust. While the trial court did find that the tractor/trailer has a value of $13,000, the trial court did not assign a value to the other asset involved in the offset equation — the GSYS option. R.C. 3105.171(G) provides that "[i]n any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided[.]" Without a finding assigning value to the GSYS option, we are unable to review the propriety of the trial court's allocation of the Jeanne Schiesswohl Trust debt to Douglas on the ground that it was offset by the GSYS option and the tractor/trailer also allocated to him. See Wenger v. Wenger, 9th Dist. No. 02CA0065, 2003-Ohio-5790, at ¶ 18. The trial court erred by failing to assign a value to the option. See id.
 {¶ 53} The trial court erred by classifying the Robert Schiesswohl debt as Douglas's separate property. We are unable to review the allocation to Douglas of the entire balance of the marital debt to the Jeanne Schiesswohl trust. Douglas's second assignment of error is sustained.
 {¶ 54} In sum, the trial court erred in its treatment of several items of property, including a vehicle, tax refunds, furniture, debts, horses, and horse equipment. This court may not, however, disturb the trial court's division of property based solely upon a review of that court's disposition of each of these items in isolation from the context of the remaining constituents of the division. Rather, we must take into account the "totality of the circumstances," and view the property division in its entirety. Briganti v. Briganti (1984),9 Ohio St.3d 220, 222. Moreover, when reviewing the equity of the property division, we may not simply substitute our judgment for the trial court. Rather, we are limited to determining whether the trial court abused its discretion in dividing the property.Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295. In sum, the appropriate inquiry is whether the trial court's erroneous disposition of the items which are the subject of this appeal "resulted in a property division, which, viewed in its entirety, was an abuse of discretion." Briganti, 9 Ohio St.3d at 222.
 {¶ 55} After viewing the entire property division, we find that the errors committed by the trial court resulted in a division which amounts to an abuse of discretion, based upon the following analysis.
 {¶ 56} The trial court assigned to the marital assets a total value of $195,830, and awarded each party equal shares of this figure. This figure fails to reflect several items that were erroneously classified as separate, instead of marital, property: the $21,355 in tax refunds that was awarded to Jacquelyn; the $32,350 debt to Robert Schiesswohl that was allocated to Douglas; and the furniture purchased after the complaint was filed but prior to the termination of the marriage, which was awarded to Jacquelyn. The total value assigned to the marital assets also fails to reflect certain items that were not valued or disposed of: the interest in the horse Sarah; the horse training credit; and the horse equipment. The total is skewed by an incorrect (and likely inflated) equity value of the Porsche, an asset which was awarded to Douglas and charged against his share of the marital property.
 {¶ 57} Additionally, the omission of certain values leaves us unable to review the propriety of certain allotments: the allocation of the $55,000 (plus interest) debt to Douglas, and the award to Douglas of two horses and a half interest in a third horse, which was used to counterbalance Jaquelyn's transfer of three other horses in violation of the temporary restraining order.
 {¶ 58} These errors infect a substantial portion of the entire property division, and, to the extent that the record permits us to review them, uniformly favor Jacquelyn over Douglas. Therefore, the errors result in an inequitable division of property which amounts to an abuse of discretion, and the trial court's judgment is reversed.
 III. {¶ 59} Appellee/Cross-Appellant's cross-assignment of error is sustained. Appellant/Cross-Appellee's first assignment of error is overruled. Appellant/Cross-Appellee's second, third, fourth, fifth, sixth, and seventh assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed in part, affirmed in part, and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed in part, affirmed in part, and cause remanded.
Whitmore, P.J. Batchelder, J. concur.
[1] The trial court did not use the terms "marital" or "separate" in its classification of the debts, instead labeling them "Joint," "Husband," and "Wife." We interpret the label "joint" to mean "marital." We read the labels "husband" and "wife" as signifying that the items listed under each category were classified as the separate property of the corresponding party.