OPINION
{¶ 1} Plaintiff-appellant Paula Greene appeals from the August 11, 2003, and August 26, 2003, Judgment Entries of the Licking County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Paula Greene and appellee Michael Greene were married on October 24, 1992, in Licking County, Ohio. No children were born as issue of such marriage.
 {¶ 3} On February 6, 2002, appellant filed a complaint for divorce against appellee in the Licking County Court of Common Pleas, Domestic Relations Division. Appellee, on March 7, 2002, filed an answer and counterclaim. Pursuant to a temporary restraining order filed on February 11, 2002, appellant was granted temporary exclusive possession of the marital residence.
 {¶ 4} Following a hearing on appellant's Civil Rule 75 motion for temporary orders, the Magistrate, as memorialized in an order filed on April 23, 2002, ordered appellee to pay the vehicle loan on appellant's automobile and the first and second mortgages, real estate taxes, and homeowners' insurance on the marital residence and to obtain and maintain vehicle insurance for appellant's vehicle.[1] After appellee filed a motion to set aside the Magistrate's order, the trial court, pursuant to a Judgment Entry filed on June 4, 2002, modified the Magistrate's order by ordering appellant to pay the second mortgage on the marital residence. The trial court, in such entry, noted that appellee "will be responsible for the first mortgage, car and home insurances, real estate taxes, [and] both car loans . . ."
 {¶ 5} Subsequently, on June 5, 2002, appellant filed a Motion for Contempt, seeking an order finding appellee in contempt for violating the Magistrate's April 23, 2002, order by failing to "pay the bills of the residence." Appellant, in her motion, also sought an order requiring appellee to immediately bring current all delinquent payments and/or to reimburse appellant for the payments that she had to make to protect her credit and to pay appellant's attorney's fees and expenses. In a supplemental motion filed on June 18, 2002, appellant sought an order from the trial court requiring appellee to reimburse her for car and homeowners insurance. Appellant, in her motion, alleged that, due to a lapse in time before appellee reinstated the insurance on appellant's vehicle and the marital residence, she was forced to pay the same in order to maintain insurance.
 {¶ 6} An oral hearing before a Magistrate was held on July 19, 2002. As memorialized in a Judgment Entry filed on July 25, 2002, the Magistrate found appellee in contempt for "failure to pay on certain marital debts and obligations previously ordered." The Magistrate, in such entry, sentenced appellee to thirty days in jail and ordered that such sentence be suspended if appellee purged his contempt by complying with all court orders. The Magistrate further stated that the suspended sentence would come on for review at the time of the final divorce trial. Moreover, the Magistrate, in her entry, stated as follows: "[i]f defendant has fully complied with all court orders between July 19, 2002, and the date of the final trial, then the court will consider defendant to have purged his contempt and the suspended sentence will be vacated. If it is determined from the clear and convincing evidence at the final trial that defendant has failed to fully comply with the court's temporary orders, then the suspended sentence may be imposed at that time without delay." Finally, the Magistrate stated that appellant's motion for reimbursement of monies paid by her on obligations that appellee was ordered to pay would be considered at the final trial.
 {¶ 7} A final contested divorce trial before a Magistrate was held on November 12, 2002. The Magistrate, in a decision filed on February 6, 2003, recommended that the parties be granted a divorce, that appellee be ordered to pay appellant $38,862.86 to equalize the distribution of assets, and that appellant not be awarded spousal support. The Magistrate, in her decision, further stated that all temporary orders would "remain in full force and effect until such time as the final decree of divorce is filed in this matter."
 {¶ 8} Both parties filed objections to the Magistrate's decision. Thereafter, on March 31, 2003, appellant filed a Motion for Contempt against appellee, alleging that appellee had violated the Magistrate's April 23, 2003, order "requiring him to pay the bills of the residence," including, but not limited to, the first mortgage and real estate taxes on the residence. A hearing on such motion was scheduled for April 15, 2003.
 {¶ 9} The trial court, in an April 7, 2003, Opinion addressing the parties' objections, scheduled an oral hearing regarding spousal support for May 8, 2003, and ordered the parties to bring a copy of their 2002 income tax return and any and all W2's and/or 1099's. The trial court, in its opinion, noted that issues regarding equalization would also be considered at the hearing.
 {¶ 10} Thereafter, pursuant to a Judgment Entry filed on July 1, 2003, the trial court ordered appellee to pay appellant $250.00 per month in spousal support for one year, commencing June 1, 2003. While the trial court agreed that appellee should pay appellant to equalize the distribution of assets, the trial court changed the amount of the equalization payment from $38,862.86 to $35,035.86.
 {¶ 11} A Judgment Decree of Divorce was filed on August 11, 2003. Pursuant to a Judgment Entry filed on August 26, 2003, the trial court denied appellant's March 31, 2003, Motion for Contempt, stating, in relevant part, as follows: "[t]he Court finds that this particular motion was filed after the final divorce trial was conducted on November 12, 2002, and after the Magistrate's Decision from that trial was filed on February 6, 2003. Moreover, the Judgment Entry filed July 25, 2002, provided an opportunity to plaintiff to offer evidence at the final trial regarding defendant's compliance with the Court's temporary orders.
 {¶ 12} "The proper time to have litigated the motion in contempt — a motion alleging failure to comply with the Court's temporary orders — was at the final divorce trial."
 {¶ 13} It is from the trial court's August 11, 2003, and August 26, 2003, Judgment Entries that appellant now appeals, raising following assignments of error:
 {¶ 14} "I. The Court erred in failing to award the wife her separate property interest in the real estate.
 {¶ 15} "II. The Court erred in failing to award the wife any portion of the husband's vacation pay and sick leave.
 {¶ 16} "III. The Court erred in awarding the wife payments rather than a division of existing assets.
 {¶ 17} "IV. The Court erred in failing to award the wife sufficient spousal support for a suitable length of time.
 {¶ 18} "V. The court erred in failing to find the husband in contempt or awarding relief in its Judgment Entry Filed 8/26/03.
 {¶ 19} Initially, we note that neither party provided the trial court with a transcript of the proceedings before the Magistrate for the trial court's review of the objections to the Magistrate's Decision. Any objection to a finding of fact must be supported by a transcript of all the evidence submitted to the Magistrate relevant to that fact or an affidavit of evidence if a transcript is not available. Civ.R. 53(E)(3)(c). It is the duty of the party presenting an objection to timely provide a transcript of proceedings. Civ.R. 53(E)(3)(c). Absent a timely transcript or appropriate alternative, a trial court is limited to an examination of the Magistrate's conclusions of law and recommendations in light of the accompanying findings of fact unless the trial court elects to hold further hearings. Wade v. Wade (1996), 113 Ohio App.3d 414,419, 680 N.E. 1305.
 {¶ 20} Likewise, our review is limited to a review of the trial court's actions in light of the facts as presented in the Magistrate's Decision. State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 654 N.E.2d 1254.
 I {¶ 21} Appellant, in her first assignment of error, argues that the trial court erred in failing to award appellant her separate property interest in the real estate located on Canal Road in Hebron, Ohio. We disagree.
 {¶ 22} In the case sub judice, at the time of the divorce, the parties were joint owners of real property located on Canal Road in Hebron, Ohio. After renting the property from appellant's parents for a number of years, the parties had purchased the same from appellant's mother in 1995, which was after their marriage, for $75,000, which was below its fair market value. In 1993, the property had an appraised value of $120,000.00.[2] Appellant now contends that the $45,000.00 difference between the $120,000.00 appraised value and the $75,000.00 purchase price was a gift from appellant's mother to her and thus constituted appellant's separate property.
 {¶ 23} Pursuant to R.C. 3105.171(B), the trial court must make a determination as to whether property is marital or separate. R.C.3105.171(A)(6)(a) defines separate property as including "all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 24} "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." (Emphasis added).
 {¶ 25} A trial court's characterization of the assets as marital or separate property will not be disturbed on appeal absent an abuse of discretion. Peck v. Peck (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 26} Because appellant did not file a transcript of the trial proceedings with her objections to the magistrate's decision, the factual findings of the magistrate are deemed established and may not be attacked on appeal.
 {¶ 27} In the case sub judice, the Magistrate, in her February 6, 2003, decision, made the following findings of fact with respect to the separate property issue:
 {¶ 28} "The evidence presented on the separate property issue is as follows: 1) the parties were married in October 1992; 2) the parties bought the property from plaintiff's mother in 1995 for $75,000.00; 3) the Magistrate received no evidence regarding the balance of any mortgage that encumbered the property when plaintiff's mother sold the property to plaintiff and defendant; 4) both plaintiff and plaintiff's mother testified that part of the value of the property — $45,000.00 worth — was a `gift', or early inheritance, to plaintiff alone; 5) neither plaintiff nor plaintiff's mother told defendant that a part of the real estate transaction was intended as a gift solely to plaintiff; 6) no gift taxes were paid on the gift by plaintiff's mother; 7) the agreement to purchase the property does not recite the fact that the selling price was reduced since a portion of the value of the property was intended as a gift solely to plaintiff; 8) plaintiff's mother's will, executed in September 1998, stated as Item Seven: "All the rest, remainder and residue of my property, rel, [sic] personal or mixed . . . I give, bequeath and devise to my three children; Paula Ann Greene, Lisa Jo Shelly and Carla Sue Pennington equally, share and share alike, to be theirs absolutely, . . . provided, however, that the share Paula Ann Greene shall receive shall be reduced by the sum of $45,000.00, which represents a sum previously given to her', 9) the property has been plaintiff's family for several decades; 10) defendant was under the belief that the rental payments that he and plaintiff made to plaintiff's mother prior to purchasing the property were in some way applied, or credited, to the purchase price because plaintiff's mother used the rent money to apply to the mortgage she had on the property; 11) when the parties purchased the property in 1995, they took the property subject to a mortgage owing to Farm Credit Services; 12) the parties' purchase agreement with plaintiff's mother clearly states that the purchase price of the property was reduced to reflect the outstanding mortgage; 13) the property transaction in 1995 was not an `arms-length' transaction as both buyers and the seller were family members; 14) the property was deeded to both plaintiff and defendant; 15) plaintiff and defendant lived on the property for several years prior to purchasing the property; 16) the total amount paid in `rent' by the parties to plaintiff's mother would be approximately $14,000.00 to $15,000.00 ($300.00 per month for 4 years); 17) the fair market value of the property as of September 9, 2002 was $238,000.00 and 20) the Magistrate received no evidence that at the time the parties purchased the real estate in 1995 from plaintiff's mother that the parties were having difficulty in their marriage.
 {¶ 29} "The Magistrate cannot find, by the clear and convincingevidence, that any portion of the value of the real property was a gift solely to plaintiff. While from a testamentary perspective it appears that Mrs. Ours made some gift, for purposes of this divorce action, and more importantly in the context of the overall picture as detailed above, the Magistrate finds that the "gift" was to the family — a gift to defendant and plaintiff as husband and wife."
 {¶ 30} The trial court, in overruling appellant's objection with respect to the issue of whether $45,000.00 of the real property was appellant's separate property, held that "the Magistrate was correct in finding that there was not proof, by clear and convincing evidence, that there was an intent by the plaintiff's mother to make a gift specifically to the plaintiff and not the defendant."
 {¶ 31} Based on the Magistrate's detailed findings of fact, we find that the trial court did not abuse its discretion in holding that appellant failed to prove by clear and convincing evidence that any portion of the value of the real property was a gift to appellee and was appellee's separate property. The facts, as found by the Magistrate, indicate that the purchase price was reduced to reflect that the parties were taking title to the property subject to a first mortgage. Furthermore, the facts indicate that appellee was never informed that any part of the real estate transaction was intended as a gift to appellant. Based on the Magistrate's findings, we find that the trial court's decision was not arbitrary, unconscionable or unreasonable.
 {¶ 32} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 33} Appellant, in her second assignment of error, contends that the trial court erred in failing to award appellant any portion of appellee's vacation pay and sick leave. We agree.
 {¶ 34} The Magistrate, in her decision, found that appellee had accumulated sick leave valued at $19,828.00 and vacation leave valued at $2,684.00, but that appellee could not "cash in" the same until he retired. For such reason, appellant was not awarded any portion of the same. Appellant had filed an objection with respect to the Magistrate's failure to award her any portion of appellee's accumulated sick leave or vacation, but the trial court failed to address such issue in its April 7, 2003, Opinion addressing the parties' objections to the Magistrate's Decision.
 {¶ 35} As noted by the Ninth District Court of Appeals in Wenger v.Wenger, Wayne App. No. 02CA0065, 2003-Ohio-5790: "[s]ick leave benefits are marital assets subject to division and distribution. Weller v.Weller, 11th Dist. No. 2001-G-2370, 2002-Ohio-7125, at ¶ 24; R.C.3105.171(A)(3)(a)(ii). Many appellate courts have likened sick leave benefits to deferred bonus payments or pension plan accumulations and, thus, categorized these benefits as marital property. Hartley v. Hartley
(Apr. 24, 1998), 2nd Dist. No. 16668; Pearson v. Pearson (May 20, 1997), 10th Dist. No. 96APF08-1100. See, also, Herrmann v. Herrmann (Nov. 6, 2000), 12th Dist. Nos. CA99-01-006 and CA99-01-011. The rationale underlying this principle is "[s]ince sick leave benefits, like deferred bonus payments or pension plan accumulations, are accumulated by the employee during employment in exchange for past services rendered, they are essentially deferred compensation earned during working years."Herrmann, supra." Id at 5. The same holds true with respect to accumulated vacation pay.
 {¶ 36} For such reason, we find that the trial court erred in failing to award appellant any portion of appellee's vacation pay and sick leave.
 {¶ 37} Appellant's second assignment of error is, therefore, sustained.
 III {¶ 38} Appellant, in her third assignment of error, maintains that the trial court erred in awarding her equalization payments rather than dividing existing marital assets. Appellant also contends that the trial court erred in not requiring the equalization payments to be secured by a lien on appellee's property to secure payment. We disagree.
 {¶ 39} In the case sub judice, the Magistrate, in her decision, ordered that an equalization distribution be made by appellee to appellant "[b]ased on the division of assets and liabilities." The Magistrate, in her decision, specifically stated, in relevant part, as follows:
 {¶ 40} ". . . Specifically, since defendant's net distribution exceeds plaintiff's net distribution by $77,725.72, defendant shall pay to plaintiff the total sum of $38,862.86 to equalize the distribution of the marital estate.
 {¶ 41} "The sum of $38,862.86 shall be paid to plaintiff in installments of $750.00 per month (except for the final months' payment) for fifty-two (52) consecutive months commencing the first day of the month following the month that the judgment entry that journalizes this decision is filed. The final and 52nd payment shall be in the amount of $612.86."
 {¶ 42} Appellant then filed an objection to this form of equalization. While the trial court upheld the form of equalization, the trial court in a July 1, 2003, Judgment Entry, held that "[t]he figure the defendant shall repay plaintiff for the difference in value of asset distribution . . . shall be changed from $38,862.86 to $35,035.86. The repayment per month shall be the same $750.00 per month as ordered by the Magistrate until paid in full." Thereafter, the Judgment Decree of Divorce stated, in pertinent part as follows: "[t]o equalize the asset distribution, Defendant shall pay to the Plaintiff the amount of $35,035.86 for which Plaintiff is granted a judgment. The judgment shall be paid in monthly installments of $750.00, beginning the first day of the month after this Decree is filed."
 {¶ 43} R.C. 3105.171(E)(1) states as follows: "[t]he court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property." (Emphasis added). R.C. 3105.171(E)(2) further provides that "[t]he court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome." (Emphasis added). In turn, R.C. 3105.171(A)(1) defines a "distributive award" as meaning "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code".
 {¶ 44} We concur with appellee that R.C. 3105.171 "clearly specifies that a distributive award may be made in payments, which is exactly what the Magistrate ordered in her Decision." Thus, contrary to appellant's assertion, R.C. 3105.71 does not require the division of assets, but rather provides for a distributive award in lieu of the same. We further find that the trial court was not required to order that payment of the distributive award be secured by a lien and that, based on appellee's ability to pay the $750.00 monthly equalization payments, the trial court did not abuse its discretion in failing to order that the award be secured by a lien.
 {¶ 45} Appellant's third assignment of error is, therefore, overruled.
 IV {¶ 46} Appellant, in her fourth assignment of error, challenges the trial court's award of spousal support to her. Appellant specifically contends that the trial court erred in failing to award her sufficient spousal support for an appropriate length of time. We disagree.
 {¶ 47} As a general matter, we review the overall appropriateness of the trial court's award of spousal support under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 48} Pursuant to R.C. 3105.18(C)(1), the trial court must consider certain factors in making determinations of spousal support. R.C. 3105.18
states, in relevant part, as follows:
 {¶ 49} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 50} "(a) The income of the parties, from all sources * * *;
 {¶ 51} "(b) The relative earning abilities of the parties;
 {¶ 52} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 53} "(d) The retirement benefits of the parties;
 {¶ 54} "(e) The duration of the marriage;
 {¶ 55} "(f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 56} "(g) The standard of living of the parties established during the marriage;
 {¶ 57} "(h) The relative extent of education of the parties;
 {¶ 58} "(I) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 59} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 60} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 61} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 62} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 63} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 64} Further, the trial court is governed by the standards and guidelines imposed by the Ohio Supreme Court in Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 554 N.E.2d 83, paragraph one of the syllabus, which reads: "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities."
 {¶ 65} In the case sub judice, the Magistrate, in her decision, recommended that appellant not be awarded spousal support. In her decision, the Magistrate made the following findings of fact, among others:
 {¶ 66} "35. The plaintiff is employed by the Union Township Trustees. Her gross annual income is now $35,000.00. In addition to these regular earnings, plaintiff receives approximately $845.00 per year for sign rent and $2,240.00 per year for farm rent ($70.00 x 32 acres). Plaintiff will occasionally receive a bonus which is equivalent to 10% of the zoning permit fees issued. As of the trial date, she had received $1,144.06 in bonuses. Plaintiff has also received compensation for working at National Trails Raceway. She received approximately $500.00 in 2001 for this endeavor.
 {¶ 67} "36. The defendant is currently employed by the State Highway Patrol earning $34.32 per hour. As of November 2, 2002, his total gross earnings were $73,770.98. He will occasionally work extra duty. As an example, defendant earned $2,250.00 in 2001 working the OQHA (Quarter Horse Association)."
 {¶ 68} The Magistrate, in recommending that no spousal support be awarded, noted that both parties were middle-aged, in good health and employed full-time and that both parties "were earning above average incomes while enjoying a middle class standard of living . . ." The Magistrate further emphasized that both parties were leaving the marriage with "more than a modicum of assets."
 {¶ 69} After appellant objected on the issue of spousal support, the trial court scheduled an oral hearing regarding spousal support for May 8, 2003. Subsequently, in a Judgment Entry filed on July 1, 2003, the trial court noted that the parties had stipulated that appellant's income was $39,616.00 per year while appellee's income was $90,795.00 per year. The trial court, noting that the parties' had a nine year marriage and "with the finding of the new income", ordered that appellant be awarded spousal support in the amount of $250.00 a month for a period one year.
 {¶ 70} We find that the trial court's award of spousal support did not constitute an abuse of discretion. The trial court clearly considered the factors set forth in R.C. 3105.18(C) in determining the amount and duration of spousal support. Based on the nine year duration of the marriage, the fact that both parties were middle-aged, in good health, self-supporting, and as noted by the Magistrate, were leaving the marriage "with more than a modicum of assets,"[3] we find that the trial court's decision was not arbitrary, unreasonable or unconscionable.
 {¶ 71} Appellant's fourth assignment of error is, therefore, overruled.
 V {¶ 72} Appellant, in her fifth assignment of error, argues that the trial court erred in denying appellant's March 31, 2003, Motion for Contempt. We agree.
 {¶ 73} Appellant, in her March 31, 2003, motion, which was filed after the divorce trial but before the decree of divorce was filed, argued that appellee should be held in contempt for violating the April 23, 2002, Magistrate's temporary order requiring him to pay the first mortgage and real estate taxes on the marital residence. The trial court, in its August 26, 2003, Judgment Entry denying such motion, stated, in relevant part, as follows: "[t]he Court finds that this particular motion was filed after the final divorce trial was conducted on November 12, 2002, and after the Magistrate's Decision from that trial was filed on February 6, 2003. Moreover, the Judgment Entry filed July 25, 2002, provided an opportunity to plaintiff to offer evidence at the final trial regarding defendant's compliance with the Court's temporary orders.
 {¶ 74} "The proper time to have litigated the motion in contempt — a motion alleging failure to comply with the Court's temporary orders — was at the final divorce trial."
 {¶ 75} As is revealed by the record, appellant previously had filed a motion for contempt against appellee on June 5, 2002, also alleging that appellee failed to make the payments required by the temporary orders. Pursuant to a Judgment Entry filed on July 25, 2002, the Magistrate found appellee in contempt for failure to pay "on certain marital debts and obligations previously ordered," sentenced appellee to thirty days in jail and ordered that such sentence be suspended if appellee purged his contempt by complying with all court orders. The Magistrate, in her entry, stated that "[i]f it is determined from the clear and convincing evidence at the final trial that defendant has failed to fully comply with the court's temporary orders, then the suspended sentence may be imposed at that time without delay." Clearly, appellee's failure to pay the first mortgage and the real estate taxes occurred both before andafter the trial in this matter. Thus, as noted by appellant, it was impossible for appellant to litigate appellee's post-trial non-payment of temporary orders at the trial.
 {¶ 76} Appellant's fifth assignment of error is, therefore, sustained.
 {¶ 77} Accordingly, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed and remanded in part.
Edwards, J., Gwin, P.J. and Boggins, J.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Division of Domestic Relations, is affirmed, in part, and reversed and remanded in part. Costs to be paid 60% by appellant and 40% by appellee.
[1] Appellee had vacated the marital residence in September of 2001. Appellee had continued paying all such expenses after vacating the marital residence until March of 2002, when he indicated to appellant that he would no longer pay the same.
[2] After appellant's father died, his one-half interest in the real estate was included in his 1993 estate and was valued at $60,000.00 (total being $120,000.00).
[3] The parties each were awarded over $200,000.00 in assets.