DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, Douglas Wilson, appeals the Judgment Entry and Decree of Divorce entered by the Wayne County Court of Common Pleas, Domestic Relations Division. We affirm in part and reverse in part.
 {¶ 2} Douglas and Jennifer Wilson divorced in 2005 after eleven years of marriage. They are the parents of two minor children, whose custody is not an issue in this appeal. During the marriage, Douglas was employed by The Halex Company and, as a union member, was a participant in the Teamsters Defined Benefit Plan. Jennifer was employed full-time by Target. While the divorce was pending, the magistrate awarded the parties joint status as residential parents, and the children remained in the marital home while Douglas and Jennifer alternated residence in a "birds nest" arrangement. The magistrate also ordered Douglas to pay the first and second mortgages on the residence plus real estate taxes and the cost of homeowner's insurance. In March 2005, Douglas lost his job with The Halex Company. On April 29, 2005, the *Page 2 
magistrate modified the temporary order to reflect Douglas's changed financial position, but noted that "[t]he magistrate realizes that there may not be enough money to go around. The Magistrate will leave it to the parties to set their own priorities for the payment of the bills. However both parties shall be prepared to show *** that they have spent all of their after-tax income on household bills." The parties placed the marital residence on the market.
 {¶ 3} On June 28, 2005, Douglas and Jennifer appeared in court for a contested divorce hearing. On July 19, 2005, the Magistrate issued a decision that (1) ordered each party to bear responsibility for the deficits that accumulated while the divorce was pending, to include "all of the mortgage indebtedness, including interest and penalties attributable to *** nonpayment of the first and second mortgage" as Douglas's "separate non-marital debt." The Magistrate divided the costs of maintaining the residence between finalization of the divorce decree and sale of the home, allocating to Jennifer "25% of some of the monthly expenses related to the home; to-wit: the first and second mortgage, the utilities, house insurance and real estate taxes[.]" Douglas was to "be responsible for all other expenses related to the home." The magistrate characterized the parties' respective indebtedness on the first and second mortgages as "in the nature of support or maintenance *** an integral part of the support obligations imposed hereunder and therefore *** not dischargable in bankruptcy[.]" The magistrate awarded certain items of personal property identified as gifts to Jennifer and ordered the parties to divide the rest through a "lottery system." Jennifer was awarded "one-half of the coverture value of [the Teamsters] pension if and when it becomes vested." With respect to fees and expenses, the magistrate determined that each party should bear the cost of their attorney's fees, but that "[t]he parties shall equally divide the litigation expenses." *Page 3 
 {¶ 4} The trial court adopted the magistrate's decision on July 19, 2005, as permitted by former Civ.R. 53(E)(4)(c).[1] Douglas filed timely objections, which the trial court overruled on November 1, 2005. Douglas timely appealed. On August 14, 2006, this Court dismissed Douglas's appeal for lack of a final appealable order. Wilson v.Wilson, 9th Dist. No. 05CA0078, 2006-Ohio-4151. The Supreme Court of Ohio reversed the decision of this Court and remanded the case for disposition on the merits of the appeal. Wilson v. Wilson,116 Ohio St.3d 268, 2007-Ohio-6056.
 STANDARD OF REVIEW {¶ 5} Former Civ.R. 53(E)(4)(b) described the options available to a trial court in ruling on objections to a magistrate's decision as follows:
 "The court shall rule on any objections the court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration."
Because the determination to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court, this Court reviews a trial court's action for abuse of discretion. Briarwood v.Bratanov, 9th Dist. No. 23318, 2007-Ohio-2476, at ¶ 9, citing Kalail v.Dave Walter, Inc., 9th Dist. No. 22817, 2006-Ohio-157, at ¶ 5. This standard applies with equal relevance in domestic relations cases that were referred to a magistrate pursuant to Civ.R. 53. See, e.g.,Frahlich v. Frahlich-Lerch (Aug. 23, 2000), 9th Dist. No. 19807, at *2. *Page 4 
 ASSIGNMENT OF ERROR I "The trial court erred in its finding that an unvested defined benefit plan through the Teamsters Labor Union in which [Douglas] was no longer a participant and no longer a member of the Teamsters Labor Union is divisible as a marital asset by a qualified domestic relations order `if and when it becomes vested' sometime in the future."
 {¶ 6} Douglas's first assignment of error is that the trial court erred by including his unvested Teamsters pension in the property division. He maintains that an unvested pension is not a marital asset subject to division; that including an unvested pension in the division of marital property is unduly speculative; and that doing so leaves the parties' interests "entangled, potentially, forever."
 {¶ 7} R.C. 3105.171(C) requires an equitable division of marital property. Trial courts have broad discretion in fashioning an equitable division, and an appellate court will not disturb the trial court's determinations in the absence of an abuse of discretion. Schaffter v.Rush, 9th Dist. No. 04CA0028-M, 2004-Ohio-6542, at ¶ 32. "The general rule is that pension or retirement benefits earned during the course of a marriage are marital assets and a factor to be considered *** in the division of property[.]" Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 178. Unvested pension benefits have value and, while some uncertainty does attend such benefits, they may be subject to equitable division by the trial court. Pruitt v. Pruitt, 8th Dist. No. 84335, 2005-Ohio-4424, at ¶ 61, citing Lemon v. Lemon (1988), 42 Ohio App.3d 142, 144 andHaller v. Haller (Mar. 18, 1996), 12th Dist. No. CA95-06-063, at *2. See, also, Varns v. Varns (Jan. 15, 1992), 9th Dist. No. 2652, at *1;Siler v. Siler (Jul. 25, 1994), 12th Dist. No. CA93-10-081, at *2 (concluding that because a portion of an unvested pension accrued during the marriage, the wife should be able to receive a portion of the pension proceeds if the husband completed sufficient years of employment for his interest to vest). *Page 5 
 {¶ 8} In this case, the magistrate noted that Douglas had worked for several years as a participant in the Teamsters Defined Benefit Plan prior to the termination of his employment. At that time, he had not yet vested in the plan and maintained that the pension was "worthless." As part of the property division, the magistrate concluded that Jennifer should "be entitled to one-half of the coverture value of the pension if and when it becomes vested."
 {¶ 9} It is true, as Douglas notes, that vesting of the pension benefit is highly speculative. At the time of the divorce, Douglas had been dissociated from the union for approximately one and one-half years and had recently accepted employment that did not affiliate him with the Teamsters again. It is also true, however, that the pension benefit accrued during the marriage and was properly considered a marital asset. In the context of the entire property division, the uncertainty that attends the pension did not create inequity. Douglas and Jennifer had limited assets. Indeed, the property division in this case consisted more of the division of marital debt than of marital property. Each party retained their own, minimally funded checking account and their own vehicle. Each was assigned responsibility for some consumer debt, and the trial court allocated responsibility for outstanding mortgage indebtedness. There were no other assets offset by the division of the unvested pension such that the property division would be inequitable in the event that the pension does not vest.
 {¶ 10} Douglas has provided no argument to this Court supporting his position that the general rule should not have been applied in this case. The trial court did not abuse its discretion by overruling Douglas's objection and adopting the magistrate's decision regarding division of the Teamsters benefit. Douglas's first assignment of error is overruled. *Page 6 
 ASSIGNMENT OF ERROR II "The trial court erred in finding that the parties shall equally divide `litigation expenses.'"
 ASSIGNMENT OF ERROR III "The trial court erred in finding that the parties shall equally divide `litigation expenses' without identifying what constitutes `litigation expenses.'"
 {¶ 11} Douglas's second and third assignments of error challenge the trial court's determination that the parties should share litigation expenses resulting from this case. Specifically, Douglas has argued (1) that the trial court erred by adopting the magistrate's conclusion regarding litigation expenses because the magistrate was not sufficiently clear in describing which expenses were subject to the decision and (2) that, in any event, it was inequitable for Douglas to share in the cost of Jennifer's "tactics *** which provided no benefit to the court in this matter."
 {¶ 12} The magistrate's decision provided that "[e]ach party shall be responsible for his/her attorney fees. The parties shall equally divide the litigation expenses." The trial court reiterated this language, adding that the litigation expenses specifically included "the cost of the Neville report." Jennifer's trial exhibit six documented payments by the parties for pension evaluations from QDRO Consultants, Inc. and Pension Evaluators; an auctioneer; and two appraisals. She also testified that she had paid deposition expenses and that she and Douglas shared the cost of the guardian ad litem. Jennifer affirmed that she was asking the trial court to split the litigation expenses equally.
 {¶ 13} R.C. 3105.73(A) permits a trial court to "award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In so doing, a court "may consider the parties' income, the conduct of the parties, and any other relevant *Page 7 
factors the court deems appropriate, but it may not consider the parties' assets." R.C. 3105.75(B).
 {¶ 14} The record before the magistrate, coupled with Jennifer's request for litigation expenses, demonstrates that the expenses subject to the magistrate's decision are readily identifiable. Douglas's position that Jennifer's attorney incurred unnecessary litigation expenses as a form of harassment is not supported by the record. By the time Douglas and Jennifer appeared for trial in this case, virtually every aspect of their divorce was hotly contested. The magistrate did not find bad faith on the part of either party, nor did the magistrate allocate the burden of litigation expenses to one spouse. The trial court did not abuse its discretion by ordering the parties to share equally in the litigation expenses. Douglas's second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR IV "The trial court erred in finding that the joint indebtedness of the parties on their first and second mortgage was `in the nature of support' and therefore not dischargeable in bankruptcy."
 {¶ 15} In his fourth assignment of error, Douglas has argued that the trial court erred by specifying that the parties' mortgage debt would be nondischargable in bankruptcy. Douglas's position is that because the parties were facing foreclosure at the time of the divorce, "[t]o saddle both parties with a non-dischargeable debt that can be collected against them, literally, for the balance of their lives, is neither reasonable nor equitable." He has also argued that the characterization of the debt was an abuse of discretion because the parties had no equity in their home and the debt bore no relationship to spousal support or child support.
 {¶ 16} As a general rule, "[p]roperty settlement obligations to a former spouse are dischargeable in bankruptcy, while obligations to provide maintenance and support are *Page 8 
nondischargeable." Barnett v. Barnett (1984), 9 Ohio St.3d 47, 49. See, also, 11 U.S.C. § 523(a)(15). 11 U.S.C.A. § 523(a) provides the relevant consideration:
 "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ***
 "***
 "(5) for a domestic support obligation[.]"
Federal law determines whether a debt is nondischargeable as a support obligation, but federal and state courts share concurrent jurisdiction to determine whether debts should be characterized as nondischargeable.Barnett at 50. When a court expressly characterizes a debt as support and, therefore, nondischargeable in bankruptcy, evaluation of the characterization follows a common sense approach:
 "There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck. In determining whether an award is actually support, the bankruptcy court should first consider whether it `quacks' like support. Specifically, the court should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits." In re Sorah (C.A.6, 1998), 163 F.3d 397, 401.
If these indicia of support are not present, courts are guided by the test set forth in In re Calhoun (C.A.6, 1983), 715 F.2d 1103, 1107. See, e.g., Snyder v. Snyder (1995), 105 Ohio App.3d 69, 77-78. Under this test, courts consider four factors:
 "First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law." In re Norbut (Bankr.Ct. S.D.Ohio 2008), Case No. No. 05-32990, at *5. *Page 9 
 {¶ 17} In this case, the magistrate analyzed the parties' mortgage indebtedness as follows:
 "[Jennifer] argued that this court should put in a provision in the decree that would make the debts assigned to each party non-dischargeable in bankruptcy. She fears that [Douglas] will try to discharge some of the parties' joint debts through bankruptcy and leave her solely liable.
 "The Magistrate understands [Jennifer's] argument and agrees that an inequitable result will occur if [Douglas] decides to declare bankruptcy on their joint debts. The Magistrate therefore will recommend the court adopt the following language as part of the final Divorce Decree:
 "With regard to the joint indebtedness on the first and second mortgage *** [t]he court further orders that the balance assumed is in the nature of support or maintenance but is not modifiable absent the agreement of the parties. The marital obligations to pay the balances [sic] is an integral part of the support obligations imposed hereunder and therefore these debts are not dischargable [sic] in bankruptcy under sections 523(a)(5) and 523(a)(15) of the U.S. Bankruptcy Code."
The trial court adopted the magistrate's proposed language regarding the mortgage indebtedness and the magistrate's decision regarding spousal support.
 {¶ 18} We note, as an initial matter, that Douglas has not challenged the characterization of the Target Visa balance. He has also not challenged the apparent characterization of the parties' mutual agreements to hold one another harmless as nondischargeable under11 U.S.C. § 523(a)(15). See, e.g., In re Schweitzer (Bankr.Ct. S.D.Ohio 2007), 370 B.R. 145, 150-51 (concluding that an agreement to indemnify a former spouse creates a new debt as a result of the divorce that may be nondischargeable under § 523(a)(15) if it is not a support obligation). This Court's discussion is therefore limited to the characterization of the mortgage indebtedness under § 523(a)(5).
 {¶ 19} The divorce decree explicitly characterizes the joint mortgage indebtedness as "an integral part of the support obligations imposed hereunder." Apart from this statement, the In re *Page 10 Sorah indicia of support are absent, and we consider the appropriateness of the trial court's determination under the Calhoun analysis. SeeIn re Norbut at *5. The first two Calhoun factors, which may be consolidated, require courts to examine the language used by the trial court and the factors set forth in R.C. 3105.18(C) regarding the appropriateness of spousal support. Id. The context for the magistrate's characterization of the mortgage indebtedness is significant in this regard:
 "[Jennifer] admits that there are not sufficient grounds to award spousal support. [Douglas's and Jennifer's] incomes are almost identical. [Jennifer] took some time off work to raise the children. However her earning potential was not substantially compromised. Neither party has any health concerns. The parties are relatively young. The term of the marriage is 11 ½ years. [Jennifer] has a good job in middle management at Target. However, [Jennifer] argues that in the past [Douglas] has made more in his jobs than [she]. She argues that [Douglas] has not attempted to obtain a job commensurate with his previous employment. She claims [Douglas] is merely `sandbagging' until this case is over. According to [Jennifer] after the trial he will obtain a good job and then escape spousal support. [Jennifer] therefore argues the court should retain jurisdiction over spousal support. [Jennifer's] proof fell short in this regard. There was no evidence whatsoever that [Douglas] has any prospects of obtaining a higher paying job than he has now. [Jennifer's] claim for spousal support and request to reserve jurisdiction over spousal support is therefore considered and denied."
The magistrate, therefore, explicitly considered the factors set forth in R.C. 3105.18(C) and determined that spousal support was unjustified in this case. Indeed, it would appear that the justification for the characterization of the mortgage indebtedness had nothing to do with spousal support and everything to do with the magistrate's concern that a bankruptcy on Douglas's part would work inequity on Jennifer.
 {¶ 20} This Court is not unsympathetic to concerns of equity. In this case, however, the characterization of the mortgage indebtedness bears no connection to spousal support, and the trial court abused its discretion by overruling Douglas's objections and adopting the magistrate's decision on this issue. Douglas's fourth assignment of error is sustained. *Page 11 
 ASSIGNMENT OF ERROR V "The trial court erred in finding that [Douglas] should be 100% liable for debts unpaid during the pendency of the divorce that [Jennifer] was responsible to pay under temporary orders."
 ASSIGNMENT OF ERROR VI "The trial court erred in finding that [Douglas] shall pay 75% of the first and second mortgage, 75% of the utilities, 75% of the house insurance, and 75% of the real estate taxes relating to the marital residence pending sale of said residence when the assets of the parties had been equally divided and their respective incomes were approximately equal."
 {¶ 21} Douglas's fifth and sixth assignments of error challenge the trial court's allocation of debt and expenses. His fifth assignment of error argues that the trial court incorrectly assigned liability for arrearages on the parties' mortgage that accrued while the divorce was pending to him despite the fact that a temporary order allocated the expenses to the parties in proportion to their incomes. His sixth assignment of error argues that the trial court incorrectly allocated responsibility for the mortgage and related expenses between the date of the divorce and the sale of the marital residence.
 {¶ 22} "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v.Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. Accordingly, App.R. 16(A)(7) provides that the brief of an Appellant must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." See, also, Loc.R. 7(A)(7). In other words, an appellant must affirmatively demonstrate the error on appeal and must provide legal arguments that substantiate the alleged error. State v. Humphries, 9th Dist. No. 06CA00156,2008-Ohio-388, at ¶ 47-48. *Page 12 
This court may disregard an assignment of error that is not presented in accordance with this rule. See App.R. 12(A)(2).
 {¶ 23} Douglas has failed demonstrate error by providing citations to legal authority and/or the record in support of his fifth and sixth assignments of error. See State ex rel. Rothal v. Smith,151 Ohio App.3d 289, 2002-Ohio-7328, at ¶ 90. It is not this Court's duty to construct arguments in support of these assignments of error on Douglas's behalf. See id., citing Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at *8 (noting that "[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.") See, also, State v. Leach, 9th Dist. No. 22369, 2005-Ohio-2569, at ¶ 38. Douglas's fifth and six assignments of error are overruled.
 ASSIGNMENT OF ERROR VII "The trial court erred in finding certain property as belonging to [Jennifer] as her separate property."
 {¶ 24} Douglas's final assignment of error is that the trial court erred by awarding certain items of personal property to Jennifer as gifts made to her during the marriage. He has argued that Jennifer failed to meet her burden of demonstrating by clear and convincing evidence that the gifts were made to her. We disagree.
 {¶ 25} R.C. 3105.171(B) requires a trial court to designate property as marital or separate in a divorce and to "divide the marital and separate property equitably between the spouses[.]" A spouse's separate property is, generally, disbursed to that spouse. R.C. 3105.171(D). Separate property includes "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). *Page 13 
 {¶ 26} The designation of separate property in this case was based on Jennifer's testimony at trial with reference to an appraisal of personal property prepared by one Jeff "Jake" Gasser. Exhibit 4, to which Jennifer referred, contained her handwritten notations regarding eight items of personal property. She testified that a circle around an item indicated that she wanted to keep it and that her handwritten notation "SJ" in the margin indicated items that were her separate property. Jennifer testified that each of those items constituted a gift to her and explained the circumstances of the gift in some detail. Douglas also testified with reference to Exhibit 4, but stated, "I don't believe there's anything on this list that is singly hers or singly mine. Everything that we've — everything that's on this list we've acquired during our marriage. It was all joint property." On cross-examination, Douglas agreed that certain items were gifts, but expressed the opinion that that the gifts were made to both of them "[a]s a married couple." He admitted that he purchased a lighted glass cabinet for Jennifer as a gift and testified that he was not sure whether her doll collection consisted of gifts to her during the marriage. Douglas testified that he did not know the source of other items.
 {¶ 27} The trial court divided the personal property of the parties as follows:
 "The property found in Appendix 4 which is circled with the initials `SJ' is the separate property of [Jennifer]. The 12 ga. single shot shotgun and the Emerson stereo are the separate property of [Douglas]. The parties shall equally divide the baby boxes and the photo albums.
 "All items that are not separate property as indicated above shall be divided between the parties through the alternate selection method (lottery system). The first selection shall be determined by the flip of a coin." *Page 14 
Based on the parties' testimony at trial, this Court cannot conclude that the trial court abused its discretion by designating the items identified in Appendix 4 as Jennifer's separate property.[2] Douglas's fifth assignment of error is overruled.
 {¶ 28} Douglas's first, second, third, fifth, sixth, and seventh assignments of error are overruled. His fourth assignment of error is sustained. The judgment of the trial court is affirmed in part and reversed in part.
Judgment affirmed in part and reversed in part.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is *Page 15 
instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
MOORE, J. CONCURS
[1] Civ.R. 53 was amended effective July 1, 2006. This provision is now contained in Civ.R. 53(D)(4)(e)(1).
[2] We are mindful that some prior decisions of this Court have reviewed the Dist. No. 02CA0065, 2003-Ohio-5790, at ¶ 2, 14. Having reviewed the evidence presented a trial, however, this Court would overrule Douglas's seventh assignment of error based on either standard of review.designation of separate property under a civil manifest weight of the evidence standard of review. See, e.g., Ostmann v. Ostmann,168 Ohio App.3d 59, 2006-Ohio-3617, at ¶ 9. This has been the case in matters that were heard by the trial court and in matters that were referred to a magistrate pursuant to Civ.R. 53. See, e.g., Wenger v.Wenger, 9th Dist. No. 02CA0065, 2003-Ohio-5790, at ¶ 2, 14. Having reviewed the evidence presented a trial, however, this Court would overrule Douglas's seventh assignment of error based on either standard of review.