OPINION
{¶ 1} Appellant/cross-appellee, Lisa Caldwell, appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, terminating a shared parenting plan, setting child support, and awarding damages based on appellee's contempt of court. Appellee/cross-appellant, Todd Caldwell, appeals the same decision, challenging the trial court's award of child support and finding of contempt. We affirm in part and reverse in part.
 {¶ 2} Todd and Lisa were married in October 1997 and later divorced in May *Page 2 
2004 after having one child born issue of the marriage in 1998. Soon thereafter, they entered into a shared parenting plan under which their daughter, Taylor, spent time at the homes of both Todd and Lisa, but Lisa was designated the residential parent and legal custodian for school purposes. According to this original plan, Todd visited with Taylor for a few hours four days a week, and in alternating weeks, had Taylor for a few hours three days a week plus the weekend. The plan also divided holidays and provided for four additional weeks of parenting time per year.
 {¶ 3} Because of contentious relations between Todd and Lisa, the court also ordered the parties to communicate via phone or email and avoid any face-to-face contact when making decisions regarding their daughter. The plan and subsequent court orders did not contain any child support obligation, as Lisa's income was substantially higher than Todd's and the two split the costs associated with rearing their daughter.
 {¶ 4} Todd remained living in the home he and Lisa shared during their marriage but later married Angie, a school teacher, who developed a close and caring relationship with Taylor. During her time with Todd, Taylor shared the home with her father and Angie, who at the time of the proceedings below were expecting their first child, as well as the family's pet Rottweiler, Chow, and American Bulldogs. Angie would often take Taylor to school and then watch her afterward on the days that Todd had to work, or until Lisa could pick Taylor up on her visiting days. Angie also helped Taylor by checking school work, and the two shared other activities that facilitated their closeness.
 {¶ 5} At one point, Lisa began a relationship with Mark Meade, a pilot and motorcycle enthusiast. During her time with Lisa, Taylor often came in contact with Meade. Unlike with Angie, however, Meade's relationship with Taylor was not as *Page 3 
positive or productive. According to various witnesses, Meade was arrested for improperly handling firearms in a motor vehicle after an incident at a bar where Meade fired shots out of his car window after getting into a disagreement with other patrons inside. The court heard testimony that Meade pointed a gun with a laser attachment at Taylor, and also brandished the weapon during a Super Bowl party. Witnesses also testified that Meade punished Taylor inappropriately, including grabbing her by the arm and locking her in a hotel hallway while on a vacation in the Bahamas.
 {¶ 6} The court also heard testimony regarding possible domestic violence between Meade and Lisa when Taylor was spending visitation time with her. Lisa, however, maintained that she was not fearful of Meade, and that she sustained the injuries as a result of Meade accidently bumping into her at a bar.
 {¶ 7} In anticipation of a two-year motorcycle trip around the country with Meade, Lisa discussed Taylor's living arrangements with Todd. Both agreed that Todd would be the full-time residential parent for Taylor while Lisa was on the trip, with Lisa having visitation on the weekends she returned to Ohio to check in with her employer. Lisa also filed a notice of intent to relocate with the court on March 30, 2006 because she and Meade were planning to move to either Virginia or Florida so that Meade could get more convenient flight schedules. According to Lisa's testimony, her relationship with Meade ended in fall 2006 and she does not keep in contact with him.
 {¶ 8} During 2005-2006, both Lisa and Todd filed motions to terminate the shared parenting plan. During the pendency of the motions, the parties filed an agreed entry with the court in September 2006 that set new parenting terms. Although Lisa neither took the motorcycle trip nor relocated with Meade, she nonetheless agreed to the new shared parenting arrangement, under which Todd was the residential parent, *Page 4 
his home was used for school registration purposes, and Taylor spent the majority of her time with Todd.
 {¶ 9} A parental investigation report was completed and filed with the court as the parties prepared for the final disposition hearing on the motions to terminate/modify shared parenting. Todd moved the court to interview Taylor in camera, and such interview occurred on June 5, 2007, the first day of the hearing on the motions. After the court heard one day of testimony and continued the hearing until November, the court denied Todd's motion to re-interview Taylor. However, Todd made his motion again, claiming that a change in circumstances had occurred that warranted a second interview. The court agreed, and re-interviewed Taylor on November 27, 2007 before resuming and concluding the hearing later that day.
 {¶ 10} Lisa also moved the court to find Todd in contempt for failing to hold her harmless on a truck loan, as ordered in the divorce decree. The court heard testimony during the hearing regarding the truck payment, including testimony that Lisa had been paying on the truck loan after Todd had discharged the debt in bankruptcy.
 {¶ 11} After the hearing, the court entered its decision, finding that a change in circumstances warranted terminating the shared parenting plan. The court determined that shared parenting was not in Taylor's best interest, and instead designated Todd as the residential and legal custodian and awarded Lisa parenting time pursuant to the Clermont County Parenting Guidelines. The court also ordered Lisa to pay Todd $630.55 in child support per month, and found Todd in contempt for failing to abide by the court order to hold Lisa harmless on the truck loan. The court ordered Todd to purge his contempt by reimbursing Lisa the $1,400 in payments she made. It is from this decision that the parties now appeal, raising five assignments of error and two *Page 5 
cross-assignments of error.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT CONDUCTED TWO IN CAMERA INTERVIEWS WITH TAYLOR."
 {¶ 14} In Lisa's first assignment of error, she asserts that the trial court abused its discretion by granting a second in camera interview because the court had already interviewed Taylor and was not entitled to re-interview her. This argument lacks merit.
 {¶ 15} An appellate court employs an abuse of discretion standard when reviewing a domestic relations issue so that the trial court's decision will only be reversed if it is unreasonable, arbitrary, or unconscionable. Smith v. Smith, Butler App. No. CA2005-04-091,2006-Ohio-2136, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Upon review, an appellate court may not substitute its judgment for that of the trial court. In re Jane Doe 1 (1990), 57 Ohio St.3d 135. "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 16} According to R.C. 3109.04, when allocating parental rights and responsibilities, the court is required to take into consideration the child's best interests. In order to do so, R.C. 3109.04(B)(1) provides that the court "in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation."
 {¶ 17} The statute, while it sets forth several mandates regarding how a court is to conduct an in-camera interview, does not prohibit multiple interviews of the child or otherwise state that a court is limited in the amount of times it may interview the child. *Page 6 
Instead, the statute sets forth the discretion with which the court may act in granting an in-camera interview and we will not read any limitation into the unambiguous statutory language. See, also,Jackson v. Herron, Lake App. No. 2003-L-145, 2005-Ohio-4046 (finding no abuse of discretion where trial court conducted multiple in-camera interviews); and In re Sherman, Hancock App. Nos. 05-04-47, 05-04-48, 05-04-49, 05-04-50, 2005-Ohio-5888 (finding an abuse of discretion where court did not grant a second in-camera interview when child indicated she had changed her mind).
 {¶ 18} Here, the court interviewed Taylor for the first time on the first day of the hearing. During the five-month period between the first day of the hearing and its completion in November, Todd moved the court to re-interview Taylor. While the court denied the motion at first, it later determined that a re-interview was necessary given that a change in circumstances had likely occurred during the intervening months. After reviewing the record, the court's decision to re-interview Taylor was not arbitrary, unreasonable, or unconscionable, and was, in fact, based on Taylor's own desire to discuss her feelings with the court. Since the court did not abuse its discretion by granting Todd's motion for a second in-camera interview, Lisa's first assignment of error is overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "THE TRIAL COURT ERRED WHEN IT FAILED TO APPOINT A GUARDIAN AD LITEM FOR TAYLOR."
 {¶ 21} In her second assignment of error, Lisa argues that the court erred by not appointing a guardian ad litem ("GAL") to represent Taylor's interests after Lisa requested that the court appoint one. In the alternative, Lisa asserts that even absent her request, the court erred by not appointing a GAL on its own accord. While we agree *Page 7 
that the court's failure to appoint a GAL constituted error, we do not agree that such error warrants reversal.
 {¶ 22} We begin by noting that Lisa is correct in her assertion that R.C. 3109.04(B)(2)(a) mandates the appointment of a GAL whenever the court conducts an in-camera interview. "The court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem for the child." On July 17, 2006, Lisa moved the court to appoint a GAL for Taylor because, according to Lisa, doing so would be in Taylor's best interests. However, at no time after July 17, 2006, did Lisa assert her desire to have a GAL appointed, nor did she make the court aware that it had not ruled on her motion.
 {¶ 23} When appointed, the role of a GAL is to protect the child's best interests during the pendency of a custody dispute. In reF.R., Clermont App. Nos. CA2008-07-070, CA2008-07-072, 2008-Ohio-6570. While Lisa asserts that Taylor's interests were not represented, she fails to explain why or how the lack of a GAL had an impact on this case. Instead, Lisa references the parental investigation report, which suggested that the trial court appoint a GAL because, according to the investigator, Taylor appeared to feel caught in the middle of Todd and Lisa's conflict. However, the court had a copy of the parenting investigation and would have been aware of the investigator's suggestion.
 {¶ 24} Moreover, the court used the parenting investigation report to obtain a comprehensive view of the circumstances surrounding Lisa and Todd's lives, as well as what would be in Taylor's best interest. This report references two conversations the investigator had with Taylor during which Taylor discussed her thoughts about her parents and their dispute, as well as the source of Taylor's negative feelings toward *Page 8 
Meade. The investigator provided the court an unbiased and well-balanced report, and provided the court ample information to determine Taylor's best interest.
 {¶ 25} After interviewing Todd, Lisa, Taylor's school principal, Taylor's former teacher, and various references submitted by Todd and Lisa, the investigator made several recommendations in order to assure that Taylor's best interest would be met during and after resolution of the custody issues. While not fulfilling the same exact function as the GAL, the investigator's report did provide the court with an in-depth view of what would be in Taylor's best interest, and the court considered the report before evaluating the best interest factors found in R.C. 3109.04(F)(1).
 {¶ 26} Additionally, as already discussed, the court took the opportunity to have two one-on-one interviews with Taylor, and was free to assess the degree to which she felt placed in the middle of her parents' disagreements. Without divulging the specifics of the in-camera interviews, but after thoroughly reviewing each, it is obvious that Taylor expressed her feelings to the court and was open and honest when asked questions regarding her concerns and wishes.
 {¶ 27} The court found, and we agree, that Taylor is a very bright and accomplished child. In between the two hearing dates, which were five months apart, Taylor turned nine years old. She aptly expressed herself during the in-camera interviews and took a proactive and sensible approach to her circumstances. See In re Donnie McQuitty (May 5, 1986), Warren App. No. CA85-04-016 (finding no reversible error where the trial court failed to appoint a GAL according to the applicable statute, but the referee held an in-camera interview with the child and therefore was aware of the child's feelings about the proceedings). It does not appear that Taylor was prejudiced by not having a GAL appointed or that appointment of a GAL would have changed the *Page 9 
trial court's decision to designate Todd as Taylor's residential and legal custodian. As such, the failure to grant Lisa's motion was harmless error and does not warrant reversal.
 {¶ 28} Although we find that the court's failure to grant Lisa's motion to appoint a GAL was harmless error, we nonetheless recognize that the trial court could have, within its own discretion, appointed a GAL but failed to do so. Therefore, we will next apply a plain error analysis to determine whether the court's failure to appoint a GAL within its own discretion, and according to R.C. 3109.04, warrants reversal.
 {¶ 29} "Although in criminal cases `[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,' no analogous provision exists in the Rules of Civil Procedure. * * * In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." Goldfuss v.Davidson, 79 Ohio St.3d 116, 121, 1997-Ohio-401. (Emphasis sic.)
 {¶ 30} The case at bar does not represent this kind of exceptional case the Ohio Supreme Court envisioned when it reservedly agreed that the criminal law concept of plain error could apply to a civil case. Based upon the parental investigation report and the court's two in-camera interviews with Taylor, the court's failure to appoint a GAL to represent Taylor did not create a manifest miscarriage of justice, or have a material adverse effect on the character of, and public confidence in, the custody determination. The failure to appoint a GAL therefore did not constitute plain error and Lisa's second *Page 10 
assignment of error is overruled.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "THE TRIAL COURT ABUSED ITS DISCRETION IN TERMINATING THE PARTIES' SHARED PARENTING PLAN, DESIGNATING TODD AS THE SOLE RESIDENTIAL PARENT AND LEGAL CUSTODIAN, AND LIMITING LISA TO 8 DAYS OF PARENTING TIME PER MONTH."
 {¶ 33} In her third assignment of error, Lisa asserts that the court erred by terminating the shared parenting plan, designating Todd the sole residential and legal custodian, and basing Lisa's visitation on the Clermont County Parenting Guidelines. This argument lacks merit.
 {¶ 34} Lisa first asserts that the trial court abused its discretion by terminating shared parenting when the parties merely requested a modification of the shared parenting plan. However, according to a motion filed with the court in December 2005, Lisa moved the court to either modify the shared parenting plan, or in the alternative "to terminate [sic] Shared Parenting Plan and designate her the residential parent and legal custodian of the minor child. The Plaintiff states, as grounds, that there has been a change in circumstances from the time of the original Shared Parenting Decree and that such modification or termination is in the best interest of the said child." In response, Todd filed a motion to terminate the shared parenting plan in April 2006, and stated that "continued operation under the plan will not be in the best interests of the child * * *" While it is true that Todd and Lisa agreed to a new plan that took effect September 2006, neither withdrew their motions for termination, and court proceedings based on the motions continued for 17 months until the court issued its final decision in February 2008. Based on the parties' own requests, the court did not abuse its discretion by *Page 11 
considering termination of the shared parenting plan.
 {¶ 35} After taking into consideration the parental investigation report, the two in-camera interviews with Taylor, as well as the testimony and evidence offered during the two-day hearing, the court terminated the shared parenting plan and designated Todd as Taylor's sole residential and legal custodian. The court found that the requisite change in circumstances had occurred and that it was in Taylor's best interest to re-designate Todd as her residential parent and legal custodian. After a review of the record, we determine the court did not abuse its discretion in doing so. See R.C. 3109.04(E)(1)(a); andFisher v. Hasenjager, 116 Ohio St.3d 53, 2007-Ohio-5589.
 {¶ 36} Specifically, the court noted that since the original shared parenting plan went into effect, Lisa's relationship with Mark Meade caused several changes. The court referenced Lisa's testimony that she had at one time planned on taking a two-year motorcycle trip with Meade, during which she planned on leaving Taylor in Todd's care. Lisa also made plans to relocate to Virginia or Florida and changed these plans several times. Taylor was aware of her mother's plans and the court recognized that these plans left Taylor feeling uncertain and created cause for concern.
 {¶ 37} The court also found a change in circumstances based on Lisa's decision to voluntarily give up her parenting time in order to take trips with Meade. On multiple occasions, Lisa attended various out-of-state "bike weeks" and took other vacations with Meade. Because the trips often took place during her designated time with her daughter, she would leave Taylor with Todd. Further, Todd and Lisa filed an agreed entry in which Taylor spent the majority of her time with Todd and Angie.[1] Overriding all *Page 12 
of these changes, the court noted that Lisa's relationship with Meade had a negative impact on Taylor, which further constituted a change in circumstances since the filing of the original shared parenting agreement.
 {¶ 38} Lisa next asserts that the court abused its discretion by designating Todd the residential parent because Todd is not financially responsible, neglected to pay some of Taylor's expenses, did not properly maintain his home, allowed Taylor to be around the family's pets (a Rottweiler, Chow, and American Bulldogs), kept unlocked guns in his home, did not require Taylor to wear protective gear when riding on a "quad runner", and is not willing to foster a relationship between herself and Taylor.
 {¶ 39} However, after reviewing the record, it is clear that the court considered Lisa's concerns when analyzing the R.C. 3109.04(F)(1)-(2) factors in order to determine whether terminating the shared parenting plan and designating Todd as Taylor's residential parent and legal custodian was in Taylor's best interest.
 {¶ 40} The court addressed several of Lisa's concerns brought to its attention during the pendency of the proceedings. The court stated in its decision that Todd adequately addressed the dog-related concerns, as Todd testified that he and Angie properly chaperoned Taylor when she was around the dogs and that they did not pose a threat to Taylor. The court also noted that any concern by Lisa about Todd's financial situation may have been disingenuous given that the parties had a substantial income disparity and Todd had Taylor the majority of the time, yet Lisa contested Todd's request for child support.
 {¶ 41} The court also considered the negative relationship Taylor had with Meade, the time Lisa gave up with Taylor in order to be with Meade, and the impact *Page 13 
Lisa's indecisiveness regarding her motorcycle trip and relocating had on Taylor. The court also noted that the discord between Lisa and Todd was taking a toll on Taylor's emotional well-being.
 {¶ 42} Conversely, the court recognized that Todd had provided much-needed stability for Taylor during Lisa's indecision regarding moving and while Lisa took extended trips with Meade. Although Lisa did not go on the two-year motorcycle trip, did not relocate, and eventually broke off her relationship with Meade, the court found that the upheaval caused by the relationship had a negative impact on Taylor.
 {¶ 43} Based on its findings, the court determined that a continued shared parenting arrangement was no longer in Taylor's best interest and that Todd could provide Taylor much-needed stability and assurance. The court's findings are well-supported by the record and its decision to designate Todd as the residential parent and legal custodian was not arbitrary, unreasonable, or unconscionable.
 {¶ 44} Finally, Lisa asserts that the trial court abused its discretion by reducing her parenting time. Instead, Lisa argues that the court should have adopted the plans offered by her or Todd that proposed schedules where Taylor would spend almost equal time with both parents. However, the court correctly considered the factors set forth in R.C. 3109.051(D) before deciding that the more evenly-split parenting schedules suggested by the parties were not in Taylor's best interest. Instead, the court noted that since the agreed entry, Taylor had been spending the majority of her time with Todd and Angie, and that she had regained the stability and certainty she lost due to Lisa's relationship with Meade. The court also noted that it was basing its decision on Taylor's need for structure in her life, and took into consideration Taylor's own wishes and *Page 14 
concerns.
 {¶ 45} Based on a these findings, which are supported by the record, the court's decision to designate Todd as the residential parent and legal custodian and to grant Lisa visitation based on the Clermont County Parenting Guidelines was not arbitrary, unreasonable, or unconscionable.
 {¶ 46} Having found that the trial court did not abuse its discretion in terminating the shared parenting agreement, designating Todd as Taylor's residential parent and legal custodian, and setting Lisa's parenting time according to the Clermont County Parenting Guidelines, Lisa's third assignment of error is overruled.
 {¶ 47} Assignment of Error No. 4:
 {¶ 48} "THE TRIAL COURT ABUSED ITS DISCRETION IN BASING CHILD SUPPORT ON INCOME TO TODD OF $27,300 PER YEAR AND INCOME TO LISA OF $67,400 PER YEAR."
 {¶ 49} In her fourth assignment of error, Lisa asserts that the court abused its discretion by calculating child support on incomes that did not accurately reflect the parties' earnings. This argument lacks merit.
 {¶ 50} Regarding Todd, Lisa argues that the court improperly determined that Todd's income was limited to $27,300. First, Lisa contends that the court should have imputed a higher wage to Todd because he is voluntarily underemployed and has the ability to earn more than his current position pays.
 {¶ 51} According to the testimony and evidence offered at the hearing, Todd works at his mother's restaurant approximately 35-37 hours a week, earning $15 per hour. During the hearing, however, Lisa offered evidence that in December 2003, Todd accepted a promotion to restaurant manager for which he earned $57,600 a year (based *Page 15 
upon salary disbursements of $2,400 twice each month). Lisa produced a letter signed by Todd's mother, dated January 16, 2004, which stated: "Todd Caldwell has been employed at my company since December 1997 as the Head Chef. As of December 15, 2003 he was promoted to General manager. His salary has since increase [sic] to $2400.00 semi-monthly." When questioned about this income, Todd explained that after working as manager for approximately one month, he gave up the higher-paying job because it demanded too much of his parenting time with Taylor. Instead of giving up his time with Taylor or having someone else care for her while he was working the extended hours, Todd went back to his previous job.
 {¶ 52} While Lisa argued that Todd's choice to give up his managerial position demonstrated that he was voluntarily underemployed, the trial court determined that there was insufficient evidence to support a finding that Todd was underemployed. We find no error in this conclusion.
 {¶ 53} R.C. 3119.01 provides that "income," for purposes of calculating child support, consists of the sum of the gross income of the parent and any "potential income" of a parent who is underemployed. "Whether a parent is voluntarily underemployed within the meaning of R.C. 3119.01 is a matter to be determined by the trial court based upon the facts and circumstances of each case," and such decision will not be disturbed on appeal absent an abuse of discretion. Combs v. Combs, Warren App. No. CA2001-11-102, 2003-Ohio-198, ¶ 6, citing Rock v.Cabral (1993), 67 Ohio St.3d 108. Moreover, a parent who claims that her former spouse is voluntarily underemployed has the burden of proof on that issue. Moser v. Moser, Warren App. No. CA2005-09-109,2006-Ohio-5381.
 {¶ 54} After reviewing the record, the trial court's decision to find the evidence *Page 16 
insufficient to fulfill Lisa's burden of proof was not arbitrary, unreasonable, or unconscionable. Instead, the letter from 2003 merely stated that Todd had recently been given a promotion at his mother's restaurant, one that he gave up in order to fulfill his parenting responsibilities for Taylor. See Daugherly v. Daugherly, Butler App. No. CA2004-04-097, 2005-Ohio-4056, ¶ 10 (finding no abuse of discretion where court did not find mother voluntarily unemployed after she took a lesser paying job in order to focus on her responsibility to provide care to her children and to "minimize the costs of daycare as well as maximize the time she can spend with the children"). However, Lisa failed to offer any other evidence that Todd's current earning potential is $57,600, or that Todd has shunned other promotions that would have paid him more than what he is currently earning.
 {¶ 55} Lisa next asserts that the trial court erred by not including cash payments Todd's mother made to him in addition to his salary. Specifically, Lisa claims that the court should have imputed $100 a week to Todd's current salary because during the hearing, Todd and his mother testified that he used to receive $100 cash per week in addition to his salary. However, the court heard testimony from Todd and his mother that that cash payments ceased in 2005 and that Todd does not now receive the additional payments. The court, within its discretion, chose not to include the past cash payments in Todd's current income and the decision not to do so was not arbitrary, unreasonable, or unconscionable.
 {¶ 56} Lastly, Lisa asserts that the trial court erred by basing Todd's income on the 36-37 hours Todd works a week instead of a full-time schedule of 40 hours a week. However, Lisa failed to produce any evidence at the hearing that Todd would be able to pick up the extra 3-4 hours a week without disturbing his current schedule, one that *Page 17 
allows him to have increased parenting time with Taylor. Instead, the trial court properly based Todd's income on his current earnings, and its decision that Lisa failed to produce any evidence that Todd is voluntarily underemployed was not an abuse of discretion.
 {¶ 57} Regarding herself, Lisa asserts that the trial court erred in calculating her income. Lisa is employed at an annual salary of $59,000. The court also heard testimony that Lisa has a border who pays her $700 a month in rent and also splits the utilities and other bills. The court, based on Lisa's own testimony regarding what income she receives from her border, imputed an additional $700 a month to Lisa's earnings.
 {¶ 58} While Lisa now claims that she does not know how much longer her border will live with her, the trial court based its decision to add the rental income to Lisa's salary on the evidence presented at trial and did not abuse its discretion in doing so. Having found that the trial court properly determined the income of both parties, Lisa's fourth assignment of error is overruled.
 {¶ 59} For ease of discussion, we will discuss Lisa's fifth assignment, and Todd's second cross-assignment of error together after addressing Todd's first cross-assignment of error.
 {¶ 60} Cross-Assignment of Error No. 1:
 {¶ 61} "IT IS AN ABUSE OF DISCRETION NOT TO SET CHILD SUPPORT AS OF THE DATE OF THE FILING OF THE MOTION TO TERMINATE A SHARED PARENTING PLAN."
 {¶ 62} In his first cross-assignment of error, Todd asserts that the trial court abused its discretion by not backdating its child support order to the date of his motion to terminate the shared parenting plan in April 2006. This argument lacks merit. *Page 18 
 {¶ 63} While Todd relies on Naragon v. Naragon (Oct. 24, 1990), Summit App. No. 14583, the case at bar differs from the facts found therein. InNaragon, the court ordered the father to pay child support. After the father's income was reduced, the court granted a decrease in child support and noted that "parties are entitled to have the order of the trial court relate back to the date upon which the motion for a modification of child support was filed." Id. at *2.
 {¶ 64} Here, however, dating from Todd and Lisa's divorce, and from the inception of the original shared parenting plan, the court never ordered child support. Moreover, in his motion to terminate the shared parenting plan dated April 3, 2006, Todd did not request any child support from Lisa. Even after the agreed entry of September 2006, neither party paid the other any support for Taylor.
 {¶ 65} In its decision dated February 19, 2008, the court ordered Lisa to pay Todd $630.55 per month, effective February 15, 2008. Although Todd argues that this date was arbitrarily chosen, we disagree. Instead, February 2008 marked the first time the court ordered either party to pay child support, and also took into consideration the impending birth of Todd's child with Angie. The court's order was also the first time that Todd was designated Taylor's sole residential and legal custodian, which gave rise to Lisa's obligation to pay child support for Taylor. Based on these circumstances, the court's decision to make the order effective February 2008 was not arbitrary, unreasonable, or unconscionable.
 {¶ 66} Having found that the court did not abuse its discretion by not making the child support order retroactive to the date of Todd's motion to terminate the shared parenting plan, Todd's first cross-assignment of error is overruled.
 {¶ 67} Assignment of Error No. 5: *Page 19 
 {¶ 68} "THE TRIAL COURT ERRED IN ORDERING ONLY A PARTIAL REIMBURSEMENT TO LISA FOR PAYMENTS SHE MADE ON A DEBT ALLOCATED TO TODD IN THEIR DIVORCE DECREE."
 {¶ 69} Cross-Assignment of Error No. 2:
 {¶ 70} "THE TRIAL COURT LACKS JURISDICTION TO MAKE A FINDING OF CONTEMPT WHERE THE DEBT IN QUESTION HAS BEEN DISCHARGED IN A BANKRUPTCY AND NOTICE OF SAID BANKRUPTCY HAS BEEN SHOWN."
 {¶ 71} In these assignments of error, the parties dispute the court's decision finding Todd in contempt for not holding Lisa harmless on a truck loan and ordering him to reimburse Lisa $1,400. Lisa asserts that the trial court should have ordered full reimbursement of all payments she made on the loan, which at the time of the hearing, was up to $2,611. Todd asserts that he should have neither been found in contempt, nor ordered to reimburse Lisa any payments because the debt had been discharged in his bankruptcy. We agree with Todd, reverse the trial court's finding of contempt, and vacate the order of reimbursement entered thereunder.
 {¶ 72} The Ohio Supreme Court has defined contempt as "disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Windham Bank v.Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. Before Todd could be found in contempt of court, the trial court must have first found that he violated the order to hold Lisa harmless on the truck loan. Therefore, Todd's challenge to the court's contempt finding now hinges on whether his bankruptcy discharged the truck debt for which he was ordered to hold Lisa harmless.
 {¶ 73} Initially, we note that contrary to the assertion in Todd's cross-assignment, *Page 20 
the trial court did have jurisdiction to decide whether his debt was discharged in bankruptcy. While bankruptcy issues are generally within the jurisdiction of the federal courts, "state courts share concurrent jurisdiction to determine whether debts may be characterized as nondischargeable." Wilson v. Wilson, Wayne App. No. 05CA0078,2008-Ohio-3195, ¶ 16.
 {¶ 74} It is well-settled in Ohio law that a court order constituting spousal or child support is not dischargeable in bankruptcy. Barnett v.Barnett (1984), 9 Ohio St.3d 47. As the court stated inBarnett, "property settlement obligations to a former spouse are dischargeable in bankruptcy, while obligations to provide maintenance and support are nondischargeable. An obligation to hold an ex-wife harmless for certain debts may fall into either category and will be nondischargeable if it is actually in the nature of alimony, maintenance or support." Id. at 50. (Internal citations omitted.)
 {¶ 75} Therefore, we must analyze whether the hold-harmless order set forth in Todd and Lisa's divorce decree was meant to be support, or if it was part of the property settlement. In order to do so, we are cognizant that federal law determines the nature of a debt as being dischargeable or not. Wilson, 2008-Ohio-3195. In In re Calhoun (C.A.6, 1983), 715 F.2d 1103, the Sixth Circuit set forth four factors a court should consider when determining the nature of a court order: "First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law." Wilson at ¶ 16, citing In ReNorbut *Page 21 
(Bankr.Ct.S.D.Ohio 2008) Case No. 05-32990, at *5.
 {¶ 76} Because state courts share jurisdiction with federal courts regarding the dischargeability of debt, we are also cognizant of the way Ohio courts have determined this issue. While most incorporate the factors found in Calhoun, the court in Barnett recognized additional indicia of support such as: "the nature of the obligation assumed, whether there are children to be provided for, the relative earning power of the spouses, and the adequacy of support absent the debt assumption." 9 Ohio St.3d at 50.
 {¶ 77} When we apply the Calhoun test, as well as the indicia of support found in Barnett, we conclude that the court's order that Todd hold Lisa harmless on the truck debt was a property settlement and bore no connection to spousal support.
 {¶ 78} While Lisa contends that the hold-harmless order was support because she waived her right to receive child support from Todd at the time of the divorce, we disagree. In the divorce decree dated May 18, 2004, the portion ordering Todd to hold Lisa harmless on the truck payment is located in the section labeled "PROPERTY DISTRIBUTION." The decree further states under the spousal support section that "neither party shall pay spousal support to the other." Additionally, Lisa was given ownership of her 2002 Chevrolet Trailblazer and a reciprocal order to hold Todd harmless on the debt associated with her vehicle so that each party received a vehicle in the divorce decree. We are also aware of the income disparity between the parties and note that Lisa did not need the hold-harmless order in order to pay her own debts, so that the order cannot be considered as providing Lisa necessary support.[2]
 {¶ 79} Because we have found that the court's hold-harmless order was a *Page 22 
property settlement rather than a spousal support order, the debt was dischargeable under bankruptcy law, and the trial court erred in holding Todd in contempt for failing to hold Lisa harmless with respect to that discharged debt. See Brodnax v. Brodnax (Aug. 21, 1990), Franklin App. No. 90AP-133 (reversing contempt finding where husband failed to hold wife harmless on debt that was determined by the Tenth Appellate District to be a property settlement and therefore dischargeable in husband's bankruptcy).
 {¶ 80} This court is aware that in sustaining Todd's assignment of error, obvious concerns over equity emerge. However, we are not in the position to rewrite federal or state law to permit a more equitable result. Instead, the power to do so rests with the legislature. Therefore, as the trial court erred in finding Todd in contempt of court, Lisa's fifth assignment of error is overruled and Todd's second cross-assignment of error is sustained.
 {¶ 81} Judgment affirmed in part, reversed in part, and the trial court's order of reimbursement is vacated.
YOUNG and POWELL, JJ., concur.
[1] We note that throughout her testimony, Lisa asserts that while she signed the agreed entry, she never intended that it have a lasting effect. However, it is clear from the record that Lisa was represented by counsel during the negotiation of the agreed entry and that she understood the ramifications of signing it. While she may have regrets after agreeing to give Todd the majority of parenting time with Taylor, she nonetheless signed the agreement and cannot now claim that she did not agree to the terms and conditions therein.
[2] We also note Lisa's reference to the child support computation sheet attached to the original shared parenting plan which lists Todd's income as $50,000 and her own as $53,698.56. Even if Todd consistently earned $50,000 per year, which the evidence established he did not, their incomes would be relatively equal, further substantiating that the order was not meant to provide Lisa support. *Page 1